WELLING AND BONNOITT v. EASTERN BUILDING AND LOAN ASSOCIATION OF SYRACUSE, N. Y.

1. BUILDING AND LOAN ASSOCIATIONS—BY-LAWS—CONTRACTS.— Where the express contract under which a building and loan association loans its funds conflicts with its by-laws, the express agreement must prevail.

2. IBID.—COMITY.—The Courts of this State are not compelled by mere comity to follow the laws of New York in construing a New York building and loan contract, when such construction, in the opinion of our Courts, is injurious to the interests of our people.

Before WATTS, J., Darlington, November, 1898. Affirmed.

Action by Lawrence S. Welling and Marion Bonnoitt against Eastern Building and Loan Association of Syracuse, New York, on the following complaint :•

First. That the plaintiffs reside at Darlington Court House, county of Darlington, in the State of South Carolina, and are citizens of the said State.

Second, That the defendants, the Eastern Building and Loan Association, above named, is now, and was at the times hereinafter mentioned, a foreign corporation, duly chartered under the laws of the State of New York. That at some date prior to the times hereinafter mentioned, the defendants entered and commenced carrying on a building and loan

business in this State, and, for this purpose and in accordance with the laws of this State, appointed and kept a resident agent therein on whom legal process might be served, so as to bind the defendant and give to the Court issuing the same, jurisdiction.

Third. That the present resident agent of the said defendant in this State is T. H. Spain, Esq., who resides at Darlington Court House, in said State, and that the defendant has property in this State.

Fourth. That on the 1st day of May, A. D. 1891, the plaintiffs, at Darlington Court House, in the county of Darlington and State of South Carolina, executed and delivered to the defendant a mortgage of certain real estate situate in the town and county of Darlington and State aforesaid, and particularly described in said mortgage, which was recorded in the office of register of mesne conveyance for the county of Darlington on the 10th day of June, A. D. 1891, in book No. 15, pages 301, 302, 303, 304 and 305.

Fifth. That the aforesaid mortgage was given to secure the payment of the sum of $6,177.60, the same being the principal, interest and premium of a loan from the defendant of $4,500, which said load was made pursuant to the by-laws of the said defendant's association, and was evidenced and secured by seventy-eight certain promissory notes of even date with said mortgage, and payable to the said defendant association, at its offices in Syracuse, in the State of New York, one on or before the last Saturday of each and every month until all of said seventy-eight notes were fully paid, together with interest on each of said notes, after maturity, at the rate of six per cent. per annum until said notes were fully paid.

Sixth. That all of said notes, and the mortgages given to secure the same, have been fully paid in accordance with the terms, stipulations and conditions of the said notes, mortgage and by-laws of said defendant association.

Seventh. That the last of said notes, amounting to the sum of $41.70, falling due on or before the last Saturday

in October, 1897, these plaintiffs, on the 28th day of September, A. D. 1897, remitted the amount of the same to the defendant by express, carriage prepaid, at its home office in the city of Syracuse, in the State of New York, and said sum, remitted as aforesaid, was received by the defendant.

Eighth. That at the time of making the remittance aforesaid, to wit: on September 28th, 1897, these plaintiffs also remitted and tendered the fees of office to the defendant, and requested the defendant to enter satisfaction of the mortgage aforesaid, in accordance with the provisions of vol. 1, chapter 42, article 3, sections 1894 and 1895, of the Revised Statutes of South Carolina of 1893; and that although the said fees of office, remitted and tendered as aforesaid, were received by the defendant, and more than three months have elapsed since said remittance and tender were made, and the same received by the defendant, and more than three months have elapsed since said request was made to enter satisfaction of the mortgage aforesaid, yet the defendant has failed and neglected to enter satisfaction of said mortgage, and has unlawfully refused and still refuses so to do, contrary to and in violation of the act aforesaid.

Ninth. That the reason of such failure, neglect and refusal of the defendant to satisfy the aforesaid mortgage, the defendant forfeited to, became and is indebted to these plaintiffs in the sum of $1,800, and that thereby this action accrued in favor of these plaintiffs against the said defendant, according to the provisions of the act aforesaid, for the said sum of $1,800.

Wherefore, the plaintiffs demand judgment against the defendant for the said sum of $1,800, with costs.

The defendant, the Eastern Building and Loan Association of Syracuse, N. Y., answering the plaintiffs' complaint herein:

First. Alleges that the true name of this defendant is, and always has been, the "Eastern Building and Loan Association of Syracuse, N. Y.," and not "Eastern Building and Loan Association," in which name it is sued.

Second. And this defendant, further answering, admits that the plaintiffs reside at Darlington Court House, county of Darlington, in the State of South Carolina, and are citizens of the said State; that the defendant is now, and was at the times hereinafter mentioned, a foreign corporation, duly chartered under the laws of the State of New York; that in accordance with the laws of the State of South Carolina, the defendant has appointed and kept a resident agent therein, on whom legal process might be served so as to bind the defendant, and that the present resident agent of the defendant in this State is T. H. Spain, Esq., who resides at Darlington Court House, in said State; and that said plaintiffs executed and delivered to the defendant a mortgage of certain real estate situate in the town and county of Darlington, and State first aforesaid, and particularly described in said mortgage, which was recorded in the office of the register of mesne conveyance for the county of Darlington, on the 10th of June, A. D. 1891, in book No. 15, page 301, &c.

Third. And each and every other allegation in said complaint contained, and not hereinbefore expressly admitted, this defendant denies.

Fourth. And for a further and separate answer and defense to the plaintiffs' complaint herein, the defendant alleges that it was duly incorporated on or about March 1, 1890, under chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof and supplementary thereto; that subsequently and on or about February 2, 1891, the plaintiffs duly applied in writing to the defendant, at its home office in the city of Syracuse, N. Y., for fifty shares of its instalment stock, and agreed thereby to abide by all the terms, conditions and by-laws contained or referred to in its certificate of shares, and also to comply with all the rules and regulations of the defendant association; that on or about said date, defendant accepted said application and issued to the plaintiffs, at its home office in the city of Syracuse, N. Y., fifty shares of its instalment stock of the par or maturity value of $100 per share, and amounting in all to

$5,000, represented by its several certificates of shares, Nos. 4967, 4968, 4969, 4970, and 4971, which said certificates of shares were on or about said date duly accepted by the plaintiffs. That subsequently and on or about the 6th day of April, 1891, the plaintiffs applied to the defendant, at its home office in the city of Syracuse, N. Y., for an advance of the maturity value of the aforesaid shares, to wit: the sum of $5,000, in accordance with the rules and regulations of this defendant, said advance to be at a gross premium of ten per cent. and interest, and running premium each at the rate of five per cent. per annum, payable monthly, and offered to secure the repayment of the same in accordance with the rules and regulations of the defendant by security on the premises referred to in the complaint herein; that said application so made as aforesaid, was accepted and granted to said plaintiffs by the board of directors of this defendant, at its said home office; that thereupon said advance of the said maturity value of said shares was duly made by this defendant and secured to be paid by the mortgage referred to in the complaint herein, and by the collateral assignment to this defendant by said plaintiffs of the aforesaid shares of stock; that the monthly payment mentioned and referred to in said mortgage comprised the monthly payment of dues estimated to accrue and become payable on said shares until the same should mature and reach their par value, said dues being at the rate of 75 cents per share per month, and in addition thereto the aforesaid monthly interest and premium during said period; that under and by virtue of the by-laws of this defendant, which was expressly made a part of said mortgage, and the provisions of the defendant's charter or articles of association, both of which said plaintiffs, for themselves, their heirs, executors, administrators and assigns, covenanted and agreed to keep and perform, as well as said law under which defendant is incorporated, the plaintiffs agreed and became obliged to pay the dues on said shares until the same matured, and the interest and premium aforesaid on said advance until said maturity; and that said dues

and interest and premium are, by virtue of defendant's articles of association and by-laws and the terms of said mortgage, all payable to this defendant, at its home office in the city of Syracuse, N. Y. And this defendant further shows that no payments of dues on said shares have beeen made since the month of July, 1897; and that at the time of the commencement of this action, and at no time prior thereto, said shares of stock so advanced upon as aforesaid, had not attained the value of $100 each, and that all of said shares had not then, and have not now, attained the value of more than the sum of $3,121.50; and that there is now justly due and owing to this defendant on account of said advance, and secured by said mortgage, after applying the value of said shares so advanced or loaned upon by said defendant, the sum of $1,878.50, with interest, premium and fines on said advance from August 1, 1897, which sum the plaintiffs have never tendered or offered to pay to the defendant. And this defendant further shows that under the law under which it is incorporated, its charter or articles of association and by-laws, it is a mutual institution, in which all of the members thereof must, according to their respective holdings, share equally in the profits and losses; and that the defendant has no means of maturing its shares except by the contributions of its members thereon and the earnings to which the same are entitled; and that the rights of plaintiffs are not superior to that of any other member in the amount that they are entitled to receive under said shares; and that having been loaned or advanced the full maturity value of said shares, they are bound by virtue of their agreements with this defendant to pay to it in cash, the difference between the value of said shares and the amount of said advance, together with any arrearages of interest and premium, if any, or to continue the payment of the monthly dues on said shares, and the interest and premium on said advance, until said shares have matured, before they are entitled to a satisfaction and discharge of their said mortgage, and that the plaintiffs have not performed either of said obligations.

Wherefore, the defendant demands judgment, dismissing the plaintiffs' complaint, with costs.

After the testimony was introduced and full argument made, the attorneys for the plaintiffs and defendant admitted the same state of facts, including the laws of the State of New York, which were introduced into evidence, and agreed, as there is no fact to be found by the jury, that his Honor can direct a verdict for the plaintiffs or defendant, in accordance with his construction of the written contract under the law. Plaintiffs' attorneys request his Honor to direct the jury to return a verdict in favor of the plaintiffs.

Defendant's attorneys asked his Honor to direct the jury to return a verdict in favor of the defendant on each or all of the following grounds:

1st. That the Eastern Building and Loan Association was incorporated under the chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof; and as the plaintiffs contracted with the defendant, then they are bound by such laws, and are not exempt from making the monthly or other stated payments provided in the articles of association, upon the ground that by reason of losses or otherwise the association has continued longer than was originally anticipated, whereby the payments made on such shares may amount to more than the amount originally advanced, with legal interest thereon.

2d. That the Supreme Court of the State of New York, in December, 1895, in the case of O'Malley *v.* The Peoples' Building, Loan and Savings Association, decided that a corporation charter under said chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof, did not possess the power or authority to issue a certificate specifying a fixed maturity period, and that such a clause should be construed as an estimated period of maturity.

3d. That the payment by plaintiffs of the sum represented by the seventy-eight notes to the defendant does not repay the amount of plaintiffs' loan to defendant, unless such pay-

ments and the earnings of the defendant had matured the plaintiffs' stock.

4th. That the plaintiffs' indebtedness upon their loan secured from defendant will not be fully paid until the shares of stock held by the plaintiffs reach par value, or by reason of plaintiffs' payment into the loan fund of defendant and the dividends credited thereto.

5th. That the plaintiffs are not entitled to a cancellation of their mortgage until such time as their stock matures and reaches the par value of $100 per share.

6th. That until the amounts paid by the plaintiffs into the loan fund of defendant, augmented by dividends credited thereto, matures plaintiffs' stock, the plaintiffs are not entitled to a discharge of their mortgage.

7th. That defendant association was incorporated under chapter 122 of the laws of 1851 of the State of New York, and the acts amendatory thereof, and that the plaintiffs are members of said association, bound by its articles of incorporation and its by-laws, rules and regulations, and the defendant being, under said laws, a mutual corporation, the plaintiffs, as members, are bound to sustain their *pro rata* share of any losses the association may suffer, as well as to participate in dividends declared from the earnings.

In ruling upon the legal question as to whether or not the mortgage in issue had been paid and should be marked satisfied, Judge Watts said: The question came up before me whether this mortgage was cancelled. If it was cancelled, it was the duty of the holder of the mortgage to cancel it in the register's office, in this county, within three months; if not, the penalty under the statutes attaches. Now, there are a great many interesting points in this case. It has been most ably argued on both sides; I have listened to it with a great deal of pleasure, as it was something new to me. I am frank to say that I know very little about building and loan associations. I have had very few cases before me since I have been on the bench and never had a case while at the bar.

For a short time I owned some stock in one, but I never knew anything about it, and I got out of it as quick as I could. But my views in the case are these, and in announcing them I do not think it is necessary for me to consider all the points which have been so ably argued in this case.

The question here is: What was this mortgage given to secure? A mortgage is a pledge to pay certain things—the pledging of certain property to pay certain things incorporated in the mortgage—a bond or note, something of this kind. My construction of this mortgage is this: The agreement between the parties in that mortgage was that these plaintiffs executed seventy-eight notes to be paid at certain times. That was the evidence of the debt. The security to pay those seventy-eight notes was the real estate described in this mortgage. When they mortgaged their property, it was not to secure fifty shares of building and loan stock. There was no provision in that mortgage that they were to continue to pay their monthly assessments thereon until the fifty shares of stock had matured the value of $100 each; but they simply pledged their property to pay the seventy-eight notes as they fell due, with any fines that might be due under the by-laws. Now, the sole question is, have they paid those seventy-eight notes? If they have been paid, the lien of this mortgage has been cancelled—extinguished. It is admitted that seventy-five of these notes have been paid, and of the other three, tender was made and the offer refused. I hold, under the plain terms of this mortgage, that when these plaintiffs paid the seventy-five notes and tendered the payment of the other three notes, and the defendant refused to accept them, that that extingished the lien of this mortgage, and this mortgage should be marked satisfied and cancelled. And the undisputed testimony also is that the fees of the register was tendered, and the defendants refused to mark the mortgage satisfied. I, therefore, hold, as a matter of law, that the penalty attaches in favor of the plaintiffs against the defendant. The mortgage says that these notes were to be paid in accordance with the by-laws of the association. That

meant they were to be paid at materity, as I take it; and if they were not paid, the fines and penalties provided by the by-laws were to be attached and to become a part of these notes.   I hold that the mortgage is cancelled, and that when the plaintiffs paid the seventy-five notes and tendered the payment of the other three notes, that it was the duty of the association to turn that mortgage over; and when they failed to do that, then the plaintiffs had the right to wait three months (I believe is the statute), and when they tendered them the fees, it was their duty to mark it satisfied; and if they did not do that, they are bound to pay up the penalty as prescribed by the statute.

I don't think it is necessary in this case to pass upon the point as to whether or not Welling and Bonnoitt are still members of this association.   I am satisfied, under the testimony, that the mortgage is dead.   I presume that this case will, of course, go to the Supreme Court, and they will settle the law fully.   I am sorry we have not a decision of our own Court with reference to a case like this.   But those are my views, and I so hold.

The defendants have asked me to direct a verdict in their favor on the ground that there is no dispute between them on the facts of the case, and that is a question of law to be construed by me.   The plaintiffs also ask for a verdict to be directed in their favor.   Under the undisputed facts in the case, I think I have the right to direct a verdict in favor of the plaintiffs.   I refuse to direct a verdict for the defendant, as requested.

From the judgment entered on this verdict, the defendant appeals.

There being on the dockets, ready for trial at same ·time, five other cases in like plight, namely, Henry M. Wilcox *v.* Same, Kittie M. Oakes and W. B. Oakes *v.* Same, H. A. Edwards *v.* Same, C. E. Ward *v.* Same, and A. W. Welling *v.* Same—it was agreed that judgment should be taken in all the cases for the amounts sued for, and an order was passed

19—56

providing that the appeal in this case should settle the issues in all of them.    Accordingly, the attorneys interested in all of the cases participated in the argument.

*Messrs. Chester M. Elliott* and *Thomas H. Spain,* for appellant, cite: *The articles of incorporation, by-laws, laws of New York, application for shares, certificates, all papers relating to loan, and the printed matter of the association are to be read and construed together as the contract between the parties:* 52 N. Y. R., 131; 39 Sup. Ct. Rep., 73; 66 N. Y., 533; 94 N. Y., 104; 83 Hun., 92; 92 Hun., 572; 148 N. Y., 281.    *This contract must be construed according to the laws of New York:* 22 S. E. R., 521; 93 Va., 380; 177 Pa. St., 233; 66 Fed. R., 827; 27 S. E. R., 274; 30 Ib., 827; 129 U. S., 397; 87 Ga., 1; 79 Tex., 246; 40 S. W., 466; 83 Fed. R., 403; 91 U. S., 406; 83 Ia., 120; 57 N. W. R., 311; 13 Pet., 77; 52 N. J. L., 550.    *That loan is made on real estate does not change this rule:* 74 Wis., 329; 27 S. E. R., 692. *No definite period mentioned in the certificates or the mortgage can be construed by the Courts as a guaranteed period of maturity:* 92 Hun., 572; 117 N. Y., 175; 72 Ala., 207; 8 R. I., 310; 31 Mich., 76.    *Plaintiff and defendant never sustained relation of debtor and creditor:* 41 N. E. R., 139; 76 N. W. R., 625.    *This Court has held that such a contract is governed and construed according to the laws of the place of payment:* 49 S. C., 402; 50 S. C., 308; 51 S. C., 33, 27; 53 S. C., 73.    *Tender must be made at place of payment:* 74 U. S., 207.    *And plaintiff having alleged tender in Syracuse, cannot deny it:* 51 S. C., 164; 8 Rich., 117.    *And hence this is N. Y. contract.    The comity recognizing the corporation of a sister State is a part of its common law, and governs unless State indicate intention to repeal:* 18 S. C., 525; 42 S. C., 291; 106 U. S., 104; 1 S. C., 155.    *Questions not considered on Circuit will not be considered here:* 49 S. C., 21; 39 S. C., 6; 37 S. C., 572.    *Plaintiff's action is purely statutory, and is conditioned on things enumerated in statute:* 40 S. C., 342; 45 S. C., 344.    *Foreign laws are*

*introduced to rebut presumption that laws in both States are same:* 10 Wheat., 367; 134 U. S., 905. *And defendant is not deprived of constitutional right by having resident agent:* 14 Pet., 67; 5 How., 310; 121 U. S., 915. *As to equitable estoppel:* 13 S. C., 29; 54 S. C., 344; 96 U. S., 676; 41 N. E. R., 139. *Point in this case has been previously decided to be mere expression of opinion:* 21 N. E. R., 12; 29 N. J. Eq., 262. *A corporation carries its charter wherever it goes:* 103 U. S., 338; 139 U. S., 55; 131 U. S., 161. *If appellant cannot set up defense that it cannot guarantee maturity at fixed time, the contract is void:* 167 U. S., 200; 48 N. E. R., 677; 41 Am. Rep., 237; 106 U. S., 104; 135 U. S., 262. *Contract valid in N. Y. is valid here:* 10 Wheat., 152; 3 Strob. Eq., 301; 6 Rich. Eq., 58; 10 Rich. Eq., 475. *The Court under admissions here could direct the verdict:* 42 S. C., 30; 13 S. C., 376; 21 S. C., 557.

*Mr. J. J. Ward,* for Welling and Bonnoitt, C. E. Ward, and A. W. Welling, contra.

*Messrs. Geo. G. Thompson* and *Wilcox & Wilcox,* for H. M. Wilcox, contra.

*Messrs. Woods & MacFarlan,* for H. A. Edwards, K. M. Oakes and W. B. Oakes, contra.

*Mr. W. F. Dargan,* of counsel for Welling and Bonnoitt, and H. M. Wilcox, contra. The latter cites: *B. & L. Assn. defined:* 30 S. E., 914. *Acceptance of notice of withdrawal terminates membership:* 27 S. E. R., 545. *Burden is on defendant to show notes are not paid:* 2 Hill L., 319. *Articles of association are binding on all its members:* 42 N. E. R., 711. *Upon payment of all dues and surrender of certificate at maturity, borrower is entitled to have mortgage cancelled:* 52 P., 623; 43 S. W. R., 280.

*Messrs. Ward & Spears* cite: *We think this case fully settled by Williamson v. B. & L. Assn.,* 54 S. C., 582. *Court will not require respondent to pay more if contract is ultra*

*vires:* 13 Am. S. R., 653; 7 Wall., 392; 96 U. S., 258; 22 N. Y., 258, 439; 63 N. Y., 62. *Appellant will not be heard on plea of ultra vires:* 83 Penn., 160; 60 Am. St. R., 172; 53 N. Y., 62; 97 N. Y., 378. *Acts of defendant's agent amount to a waiver of any right to now insist that plaintiffs' cause of action has not accrued:* 5 Kans., 275; 17 N. Y., 428; 10 Ins. Law J., 774. *Where period of maturity of these certificates expired and they are presented for payment, membership terminated and plaintiffs became creditors:* 85 Pa. St., 394; 93 Pa. St., 308; 2 Bosw., 381; 25 N. Y. Supp., 835.

*Messrs Woods & MacFarlan* cite: *Party desiring rules of law different to those of forum, must aver and prove them:* 5 N Y., 448; 91 U. S., 13; 8 Minn., 13. *When a contract is open to two constructions, one lawful, the other unlawful, the former must prevail:* 117 U. S., 567; 86 N. Y., 384; 118 U. S., 235. *Private citizens are not presumed to know foreign laws:* 9 Pick., 112; 9 Col., 11; 22 N. Y., 259. *Defendant is estopped from setting up plea of ultra vires:* 22 N. Y., 259; 9 Col., 11; 121 N. Y., 582; 137 N. Y., 417; 63 N. Y., 62. *It is also estopped by conduct:* 42 S. C., 231; 27 S. C., 234; 11 N. E. R., 243; 20 Ch. Div., 21; 3 DeG. and J., 387; 15 Nev., 428. *When loans were granted, plaintiffs' shares of stock were withdrawn, and their membership ceased:* 50 S. C., 89; 27 S. E. R., 32; 12 Rich. Eq., 124; 15 S. C., 462; 44 S. C., 120. *Place of performance is a mixed question of law and fact, intention of parties governs:* 19 S. C., 588; 49 S. C., 407; 51 S. C., 428. *If these be N. Y. contracts, they are unlawful:* 106 U. S., 124; 69 Me., 105. *Our statutes, acts 1897, 484, acts 1898, 747, requiring all contracts to be construed according to S. C. laws, applies here:* 54 S. C., 428. *The enforcement of foreign laws rests solely upon theory of comity:* 45 S. C., 369; 38 N. J. Eq., 224. *What is meaning of comity?* 159 U. S., 113; 54 S. C., 413.

November 28, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY.   This action was brought for the purpose of recovering the penalty under sections 1894-1895 of the Revised Statutes, for not entering satisfaction in the proper office on the mortgage executed by the plaintiffs in favor of the defendant.   The complaint and the defense set out in the fourth paragraph of the answer, state the facts out of which the controversy has arisen.   That part of the mortgage which is material to the consideration of the questions raised by the exceptions is as follows: "This grant is intended as a security for the payment of the sum of $6,175.60, the same being the principal, interest and premium of a loan from said association, which said loan was made pursuant to and accepted under the provisions of the by-laws of said association, and which said by-laws have been read by the mortgagors and are hereby made a part of this contract, which said loan is evidenced and secured to be paid by seventy-eight certain promissory notes of even date herewith, executed by the said Lawrence S. Welling and Marion Bonnoitt, payable to the said association, at its office in Syracuse, as follows: one of each of said notes is to be paid on or before the last Saturday of each and every month until all of the seventy-eight notes are fully paid, together with interest on each of said notes after maturity at the rate of six per cent. per annum, payable semi-annually until said notes are fully paid.   And the said mortgagors, for themselves and their heirs, executors, administrators and assigns, hereby covenant * * * and agree * * * with the party of the second part, its successors and assigns, to pay said principal, interest and premiums at maturity, and the interest accruing on said notes after maturity, and all fines and penalties that may be imposed pursuant to the provisions of the constitution and by-laws of said association, and also keep and perform all promises and engagements made and entered into with said association, according to the true intent and meaning of its by-laws and articles of association."   The plaintiffs introduced in evidence a circular letter

entitled "The Definite Contract Plan," which among other things contained the following:

"*For the Investor*—This association issues three classes of certificates, designated as instalment, paid up, and fully paid. All of which are guaranteed to mature in 6 1-2 years. Amply secured by first mortgages on real estate. Paid up stock doubles in 6 1-2 years; fully paid certificates; guaranteed quarterly dividends, seven per cent. per annum.

"*For the Borrower*—This association has no auction sales, no bidding for loans, and a definite time for repaying a loan.

"*Liabilities Inserted Here*—The only association making a contract definite in every particular; withdrawal value clearly stated, and never less than the amount paid in instalments.

"*Stock Matures in 78 Months*—Borrowers know the exact amount required to cancel their mortgage. No auction system, no lapses, no forfeitures."

The plaintiffs also introduced in evidence another circular which, among other things, contained the following statement:

"*Illustration*—Showing costs and profits to the investor of ten shares of $1,000 in six and one-half years, at time of maturity:

| | |
|---|---:|
| He pays a membership fee of $1.00 per share.. .. | $10 00 |
| He pays monthly instalments of $7.50 per month for 78 months, $7.50x78.. .. .. .. .. .. .. .. | 585 00 |
| Total amount invested.. .. .. .. .. .. .. .. .. | $595 00 |
| He receives in cash at maturity.. .. .. .. .. .. .. | 1,000 00 |
| His net gain is.. .. .. .. .. .. .. .. .. .. .. .. | $405 00 |

"*Illustration*—Showing the cost of $1,000 loan on ten shares of stock for six and one-half years. He bids ten per cent. ($100), which is deducted from the $1,000 borrowed:

| | |
|---|---:|
| He pays $15.84 per month for 78 months.. .. .. | $1,235 52 |
| He paid for stock.. .. .. .. .. .. .. .. .. .. .. | 10 00 |
| Total.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | $1,245 52 |

"It will be seen from the above that $345.52 is the amount paid in excess of the actual amount received on loan. This for the use of the money for six and one-half years. Thus the borrower pays less than six per cent. per annum."

The first and main question that will be considered is whether there is error on the part of the Circuit Judge in his construction of the contract. In the case of *Williamson* v. *B. & L. Association,* 54 S. C., 582, the Court says: "The agreement alleged in the plaintiff's affidavit and the by-laws present schemes for maturing the shares of stock that are radically different. The provisions of the said agreement and of the by-laws for maturing the shares of stock are repugnant and in irreconcilable conflict. The question is thus presented for this Court to decide which shall prevail * * * It is a well known fact that comparatively few people that become shareholders in such associations are familiar with their by-laws. They rely upon the honesty, integrity and fair dealing of those who manage the affairs of the association. It is also a well known fact that the by-laws are frequently intricate, and almost unintelligible to the average shareholder, and those in charge of the affairs of the association usually become exceedingly expert in the interpretation of them, thus giving the association a decided advantage in the way of information over the shareholders. Public policy, in order to prevent the perpetration of fraud, and to prevent just such a case as we now have before us, in which the plaintiff alleges that he was induced by the express promises and the literature of the defendant to part with his money in purchasing its shares of stock, demands that the defendant should not be allowed to elect whether it will be bound by its by-laws or its express agreement as to the time when the shares would mature. * * *"

The circular will next receive consideration. The construction of a written instrument is a question of law to be decided by the Court. This Court has the right, therefore, to construe the circular. It unquestionably shows that the defendant interpreted the contract to mean that the shares

would mature *at a fixed and definite period.* It is a well settled principle that when the construction to be given a contract is rendered doubtful by the language thereof, the interpretation of the contract by the parties themselves is entitled to great weight. *Chicago v. Sheldon,* 9 Wall., 50; *Railroad Co.* v. *Trimble,* 10 Wall., 367; *Steinbach v. Stewart,* 11 Wall., 566; *Lowber* v. *Bangs,* 2 Wall., 728. Our conclusion as to the proper construction of the contract is in harmony with the interpretation placed upon it by the defendant, and this is an additional reason why the by-laws should not prevail against the express agreement fixing the time when the shares would mature. From the foregoing it will be seen that the express agreement set forth in the mortgage and the by-laws of the association are inconsistent and in irreconcilable conflict. As they are repugnant, the express agreement, and not the by-laws, must prevail.

The appellant, however, contends that the said agreement and the by-laws are to be construed under the laws of New York. In the case of *Gooch* v. *Faucette* (N. C.), 39 L. R. A., 835, the Court uses this language in speaking of comity: "This is not a right of either State, but is permitted and accepted by the States from mutual interest and convenience, from a sense of the inconvenience which would otherwise result, and from a moral necessity to do justice in order that justice may be done in return. Without this rule, the law of one State can have no force in another. But there is no comity among the Courts of the different States. They administer the law in the same way and by the same reasoning by which all other principles of the municipal law are ascertained and guided. It is the duty of every State to look to the interests of its own subjects. Comity being voluntary and not obligatory, can not supercede all discretion on the subject. Vattel, at page 61, says: 'It belongs exclusively to each nation (State) to form its own judgment of what it prescribes to it—what is proper or improper for it to do; and it will examine and determine what it can do for another, without neglecting the duty

which it owes to itself.'    No State can demand the recognition of its laws in another, if they are deemed by the latter to be impolitic or unjust, of bad morals, or injurious to the rights and interests of its citizens, or against its public policy.    In *Bank of Augusta* v. *Earle,* 38 U. S., 13 Pet., 519, 589, 10 L. ed., 274, 308, Chief Justice Taney said : 'And Courts of justice have always expounded and executed them (contracts) according to the laws of the place in which they were made, provided that law was not repugnant to the laws or policy of their own country.    The comity thus extended to other nations is no impeachment of sovereignty.    It is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy or prejudicial to its interests * * *'    Story Confl., p. 32, section 38, says : 'In the silence of any positive rule * * * Courts of justice presume the tacit adoption of them (foreign laws) by their own government, unless they are repugnant to its policy or prejudicial to its interests.'    Many other authorities to the same effect might be cited."    In the case of *Pope* v. *Hanke,* (Ill.), 28 L. R. A., 568, the Court says : "Comity between different States does not require a law of one State to be executed in another, when it would be against the policy of the latter State.    No State is bound to recognize or enforce contracts which are injurious to the welfare of its people, or which are in violation of its own laws" (citing a number of authorities).    It thus appears that the State is not compelled from mere comity to recognize the laws of New York, for the reasons stated.    The agreement herein is, in our opinion, injurious to the interests of our people, and whatever may be the laws of New York, we do not think they should be enforced in this State.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.