## WALKER & BROTHERS *v.* MANNING, Com'r, &c.

Parol contemporaneous evidence is inadmissable to contradict or vary the terms of a valid written contract.

Where the plaintiffs brought an action for the recovery of damages, under a written contract with the Board of Public Works of the State of Iowa, for the erection of the lock and dam at Belfast, on Section No. 13 of the Des Moines River Improvement, and aver in their petition, that in compliance with the contract, they commenced the erection of said lock and dam; and that they were prosecuting the work with all convenient speed, when in the month of April, 1857, the Board of Public Works ordered the work to be stopped, and refused to execute the said contract, and prevented the said plaintiffs from completing the same; and where upon the trial the plaintiffs introduced the contract and specifications, and gave evidence tending to prove the actual cost to the plaintiffs, when completed, of the "masonry laid in lock wall, of cut stone and range-work," and thereupon the defendant introduced G. W. as a witness, who testified that he was the chief engineer of the Des Moines River Improvement at the time, and as such, made with the plaintiffs the contract sued on; that nothing was said when the contract was made, as to the construction of the specifications in regard to the cut stone and range-work masonry in the lock wall; that one of the plaintiffs was interested in the contract for building the lock and dam at Croton, six miles above Belfast, which had been in process of erection during the year 1848, &c., and which was not completed, when the contract sued on was executed; that dams had been partly erected by other contractors at Farmington, &c.; that the specifications referred to were printed and published before the letting of contracts in 1848; that they were generally attached to contracts entered into; that the specifications in relation to "masonry in lock walls," was not susceptible of any misconstruction or misunderstanding; that the witness believed that the plaintiffs understood that the "lock walls, range and course-work," were not to be done as specified;

that the specifications referred to were a part of the contract; that at the time the contract was made, the terms of the contract were not intended by the parties, to be understood in a different sense from that expressed upon its face; and where the plaintiffs, on cross-examination, proposed to prove by the same witness, the following facts: 1. The character of the "masonry in lock walls, cut stone, and range work," done upon the locks at Croton, &c., under similar specifications, and under the direction of the State Engineer; 2. That the work to be done by them was to be of the same quality as the work on the lock at Croton, then in process of erection; 3. That the plaintiffs understood from the contract, that the "cut stone, course, or range work," to be done by them, was to be different from the work described in the spe- cifications; and, 4. That the State Engineer, who made the contract, and the plaintiffs, both understood from it, that the "cut stone, course, or range work," was to be done in a different manner from that described in the specifications—to which evidence the defendant objected, and the same was excluded by the court; *Held*, 1. That the evidence was not admissable under section 2401 of the Code; 2. That the evidence was properly excluded.

*Appeal from the Des Moines District Court.*

WEDNESDAY, OCTOBER 13.

The plaintiffs sue upon a contract made April 15, 1850, with the Board of Public Works of the State of Iowa, for the erection of the lock and dam at Belfast, on Section No. 13 of the Des Moines River Improvement. The plaintiffs aver that, in compliance with the contract, they commenced the erection of said lock and dam, and were prosecuting the work with all convenient speed, when in the month of April, 1851, the Board of Public Works, ordered the said work to be stopped, and refused to execute the said contract, and prevented the said plaintiffs from completing and fulfilling the same; and they now seek to recover the profits they would have made, if they had been permitted to go on and complete the work; or, in other words, sue for the damages they have sustained by reason of the rescission of the contract by the Board of Public Works.

Upon the trial, the plaintiffs introduced the contract and specifications, and gave evidence tending to prove the

actual cost to the plaintiff, when completed, of the mason-ry laid in lock wall, of cut stone and range-work."

The defendant then introduced a witness, Guy Wells, who stated that he was the chief engineer of the Des Moines River Improvement, at the time, and as such, made with the plaintiff, the contract sued on; that nothing was said when the contract was made, as to the construc-tion of the specifications in regard to the cut stone and range-work masonry in the lock wall; that one of the plaintiffs was interested in the contract for building the lock and dam at Croton, six miles above Belfast, which had been in process of erection during the years 1848, 1849, and 1850, and which was not completed when the contract sued on was executed; that dams had been part-ly erected by other contractors, at Farmington, Bonaparte, and Bentonsport; that the specifications referred to were printed and published before the letting of contracts in 1848; that they were generally attached to the contracts entered into; that the specifications in relation to " ma-sonry in lock walls," was not susceptible of any miscon-struction or misunderstanding; that the witness believed that the plaintiffs understood that the " lock walls, range and course-work," were not to be done as specified; and that the specifications referred to were part of the contract. The witness was then asked, whether at the time it was made, the terms of the contract were intended by the par-ties to be understood in a different light from that express-ed on its face? To which he replied, that it was not, and that no other construction could be placed upon it.

Upon cross-examination, the plaintiffs proposed to prove by the witness: 1. The character for the " masonry in lock walls, cut stone, and range-work," done upon the locks at Croton, Farmington, Bonaparte, and Bentonsport, under similar specifications, and under the direction of the State Engineer; 2. That the work done by them, was to be of the same quality as the work on the lock at Croton, then in process of erection; 3. That the plaintiffs under-stood by the contract, that the "cut stone, course or range-

work," to be done by them, was to be different from the work described in the specifications; and, 4. That the State Engineer, who made the contract, and the plaintiffs, both understood from it, that the "cut stone, course or range-work" was to be done in a different manner from that described in the specifications. This evidence being objected to by the defendant, was excluded by the court. From this ruling the plaintiffs appeal, and assign the same as error.

*J. C. & B. J. Hall*, for the appellants, contended: 1. That the evidence was admissible generally; 2. That it was admissible under section 2401 of the Code; and cited the following authorities: Code, sec. 2400; 1 Greenl. Ev., sec. 278; Ib., sec. 282; Ib., sec. 293; *Rener* v. *Bank of Columbia*, 9 Wheat., 590; *Bank of Utica* v. *Smith*, 18 Johns., 230; *Farm. and Mech. Bank* v. *Champlain Trans. Co.*, 16 Vermont, 52; 18 Ib., 38, 131.

*Rankin, Miller & Enster*, for the appellee, relied upon 1 Greenl. Ev., sec. 66; Ib., sec. 68; Ib., sec. 275.

STOCKTON, J.—The matter in dispute between the parties, was as to the quality of the work to be done. The plaintiffs claim that they were to put into the lock, masonry of the same quality as that upon the locks at Croton, &c., built under a similar contract, with the same specifications; and in seeking to introduce testimony of the character of the masonry work at Croton, their aim was to have the jury estimate their damages as to the difference between the cost of such work, and the price fixed by the contract. Of the quality of the work to be done by the plaintiffs, we are not informed, as the specifications have not been made a part of the record. But if the work that had been done at Croton, was such as was required to be done by the contract sued on, no injury could have resulted to either party by suffering the witness to give evidence of its character and quality. If it was not, then it was

proper to exclude the evidence, and not permit the masonry at Croton to be adopted, as the measure of the value of the work to be done by plaintiffs.

It is conceded that the work at Croton was not of the quality required by the specifications. The plaintiffs, however, sought to prove further, that it was the understanding of the parties to the contract, at the time of its execution, that the masonry was to be done in a different manner from that contained in the specifications; and that it was to be of a quality similar to that upon the lock at Croton. We do not see how this testimony could be at all legitimate. By the contract, it was agreed that the work should be done in accordance with the specifications annexed. The offer of the plaintiffs was to show, that it was the understanding of the parties, that the work should not be done according to the specifications, but different therefrom; and that it was not to be of the character and quality therein described, but of the character and quality of the work upon the lock at Croton. To have admitted the evidence, would have been a plain violation of the rule, that " parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." 1 Greenleaf's Evidence, section 275. It is contained in the contract, that the work is to be done under the direction of the engineer having charge of the improvement of the Des Moines river; but no power is conceded to the engineer to do more than change the plan and location of the work—he was not to change the quality or price.

It is claimed that, inasmuch as the witness stated, that he believed the plaintiffs understood that the masonry of the lock walls, was not to be done as specified, that the evidence should have been admitted. By section 2401 of the Code, it is provided that, " where the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party, in which he had reason to suppose the other understood it." We do not see that this provision of the statute ap-

plies to the present case. There is nothing in the testimony from which it can be inferred, that the terms of the agreement have been intended by the parties in a different sense. The witness states that it was not capable of any misconstruction or misunderstanding—that only one construction could be put upon it. The understanding of the plaintiffs that the masonry on the lock walls was not to be done as specified, was not a sense or construction placed by them upon the terms of the contract, but arose from something entirely outside of it; and in this instance, is admitted to have arisen from the fact, that the State had accepted and paid for work of an inferior quality, upon other locks, built under contracts containing the same specifications— in one of which contracts, viz: that for the lock and dam at Croton, one of the plaintiffs was interested.

The question is not, whether the engineer of the State, after the work was completed, would have accepted it, although not done in conformity to the specifications, as the work of inferior quality on the other locks, had previously been accepted and paid for; but it is whether the State might not insist upon the work being finished according to the specifications, and refuse to pay the contract price, except for masonry of the stipulated quality and character. In our view of the matter, there is nothing in the contract or the testimony, to prevent her from so doing; and, as little reason can there be for denying her the right to insist, that in estimating the plaintiffs' damages, they shall be allowed, as and for their profits, nothing more than the difference between the cost of the stipulated quality of work, and the contract price.

Judgment affirmed.