International Building, etc., Assn. v. Bratton.

THE INTERNATIONAL BUILDING AND LOAN ASSOCIATION
v. BRATTON, ET AL.

[No. 2,926.    Filed Jan. 31, 1900.    Rehearing denied May 18, 1900.]

BUILDING AND LOAN ASSOCIATIONS.—*Mortgages.—Clause Limiting Number of Payments.*—A stipulation in a building and loan association mortgage limiting the number of payments required to be made by the borrower is a valid and binding obligation, and when the borrower has paid the stipulated number of payments the debt is extinguished, notwithstanding the fact that the total sum of dues paid by the borrower, together with the dividends thereon, did not equal the amount of the loan.

From the Boone Circuit Court.    *Affirmed.*

O. P. *Mahan*, I. M. *Kelsey*, W. N. *Harding* and A. R. *Hovey*, for appellant.

S. R. *Artman* and F. C. *Reagan*, for appellees.

HENLEY, J.—Appellant commenced this action in the court below against appellees, seeking to recover upon a bond executed by James Silver and Eliza Silver. The bond bears date March 30, 1891, and is for the sum of $600, with interest at the rate of five per cent., and a premium of five per cent., and ten per cent. attorney's fees. The complaint avers that on the 7th of April, 1891, appellees, Henry W. Henderson and Howard M. Henderson, assumed in writing the payment of said bond, and that on the 27th of May, 1892, the appellee Bratton, by written agreement, assumed the payment of said bond. The bond or note sued on is the evidence of a loan made by appellant to James and Eliza Silver, which was secured by a mortgage upon certain real estate in the city of Lebanon. Appellees, Henry and Howard Henderson, assumed the payment of the bond when the mortgaged real estate was conveyed to them. Appellee Bratton assumed the payment of the bond when he purchased the mortgaged property from the Hendersons. The bond and the written agreements of assumption made by

appellees are filed with, and made part of, the complaint. It is averred that the debt is due and unpaid, and judgment is demanded for $650. The Hendersons were defaulted. Appellee Bratton answered in two paragraphs. The first paragraph of answer was a general denial. The second paragraph alleged substantially the following facts: That James and Eliza Silver did, on the 30th of May, 1891, execute the bond, as made part of appellant's complaint, and that at the same time said parties, to secure the payment of said bond, executed a mortgage to appellant upon the south half of lots numbered twenty-five and twenty-six in Amelia Zion's addition to the city of Lebanon; a copy of the mortgage is filed with, and made a part of, the answer. That it is provided in said mortgage that the mortgagor shall in no event be required to pay monthly payments of $9.50 for more than seventy-eight months from the date of said mortgage, and that said bond provides that, if the makers shall well and truly keep and perform all the covenants and agreements of said mortgage, then the said bond shall be void and of no effect. That appellees, Henderson and Henderson, purchased the mortgaged property of Silver and wife, and assumed the payment of the bond and mortgage. That appellee Bratton purchased said mortgaged real estate of the Hendersons, "and assumed and agreed to pay, in accordance with the stipulations of said mortgage, the remaining sum due plaintiff upon the bond herein sued on, which assumption was duly accepted by plaintiff." It is then averred that appellee has fully paid and satisfied appellant's claim, as stipulated in the bond and mortgage, by the payment of more than seventy-eight monthly payments of $9.50 each. Appellant replied to the second paragraph of appellee Bratton's answer, in two paragraphs,—the first a general denial. The second paragraph of reply is as follows: "And, for further reply to the second paragraph of the separate answer of the defendant, James B. Bratton, the plaintiff says that the agreement limiting payments to sev-

enty-eight months, as pleaded in said paragraph of answer, was not fairly within the scope of the business contemplated by the articles of incorporation of the plaintiff association, as the proper and legitimate purpose of its creation, and was in direct conflict with and disregard of methods necessary to the effectual accomplishment of the purposes for which said association was created; that such agreement, if so entered into, was illegal and made by the association or its officers without authority of law, and in violation of law, and was and is *ultra vires;* that the agreement contained in said mortgage, and referred to in said paragraph of answer, was intended to apply only to monthly payments of dues on stock, and was not intended to and does not apply to payments of interest and premium on the loan; that the payments of dues made by defendants on the bond sued upon, and the mortgage pleaded in said paragraph of answer, together with all dividends to which the same is entitled, amount only to the sum of $496.68, and do not mature the stock pledged as collateral security for the payment of said loan, as only the sum last aforesaid is available in liquidation of the loan, and the dues paid and the dividends accrued fall $103.32 short of paying said indebtedness, to which deficiency should also be added interest and premiums since September 1, 1897. Wherefore," etc. Appellees did not demur to the second paragraph of appellant's reply, and the cause went to trial by the court upon the issues so formed, resulting in a judgment in favor of appellees,— that appellant take nothing by its suit.

The only alleged error brought to the attention of this court arises from the ruling of the lower court in overruling appellant's motion for a new trial. The sufficiency of the evidence is the only question presented by the motion for a new trial. The evidence consisted of the bond and the mortgage, the various contracts of assumption evidenced by the deeds made to the different purchasers, and the oral testimony of the secretary of appellant.

The bond executed by Silver and his wife was as follows: "Know all men by these presents: That James Silver and Eliza Silver, his wife, of Boone county, and State of Indiana, are held and firmly bound to the National Building, Loan and Savings Association, of Indianapolis, Indiana, in the sum of $600, lawful money of the United States of America, to be paid to said association, its certain attorneys, successors, or assigns, to which payment well and truly to be made, they bind themselves, their heirs, executors, and administrators, and each and every one of them, firmly by these presents. Sealed with their seals and dated the 30th day of March, A. D. 1891. The condition of this obligation is such that if the above bound James Silver and Eliza Silver, his wife, their heirs, executors, or administrators shall well and truly pay, or cause to be paid, unto the above named, the National Building, Loan and Savings Association, of Indianapolis, Indiana, or its certain attorneys, successors, or assigns, the just and full sum of a loan of $600, this day to them made, on or before the 30th day of September, 1897, together with interest on such sum at the rate of five per centum per annum, and a premium of five per cent. per annum, payable on or before the last Saturday of each month, during the existence of this loan, on six shares of the capital stock of said association, and together with a sum of seventy-five cents per share on each of said six shares as the monthly dues thereon (said shares being the property of James Silver and Eliza Silver, and having been transferred by them to said association as collateral security for this bond; all said sums being thereby made payable at the office of the said association, in Indianapolis, Indiana), and if said obligors shall well and truly keep and perform all the covenants and agreements of a certain mortgage, of even date herewith, executed by James Silver and Eliza Silver to said association to secure the performance of the conditions of this bond and of said mort-

gage, the provisions of which mortgage are hereby declared to be parts of this contract, then this obligation to be void and of no effect; otherwise, to remain in full force and virtue. Said obligors each severally represent to said association that said Eliza Silver is the principal, and not the surety herein, and that the said sum of money borrowed by the said Eliza Silver hereon, and no part thereof, is to be used by her in paying any indebtedness of her husband or person other than her own, and that said money is to be used by her own individual business, and for her sole and separate use, as follows, viz.: (1) In paying expenses in making this loan; and, (2) in settlement for material used in the construction of buildings,—and said money, and no part thereof, shall be used in any other manner or for any other purpose than above expressed. That said James Silver and Eliza Silver, his wife, hereby agree to pay said several sums, and to perform all the conditions of this bond and said mortgage, and to pay ten per cent. attorney's fees, without relief from the valuation or appraisement laws. Should the above boundens, James Silver and Eliza Silver, elect to pay this bond and withdraw from the association before its maturity, they may do so, receiving thereon the amount of money paid by them on their said shares as monthly dues credited to the loan fund of said association, together with six per cent. interest per annum thereon: Provided that, to entitle said obligors to interest, said shares shall be of at least six months' standing. [Signed]

[Seal]    .    .    James Silver.
                        her
[Seal]                Eliza (X) Silver.
                        mark.

Signed and delivered in the presence of Robert W. Roberts."

The mortgage executed to secure the payment of the bond contained the following provisions: "This mortgage is executed and intended as a security for the performance by the said James Silver and Eliza Silver of certain stipula-

tions and agreements entered into by said James Silver and Eliza Silver with said association, as set forth in a bond executed by said James Silver and Eliza Silver to said association, of even date herewith, in the penalty of $600, conditioned that the said James Silver and Eliza Silver shall continue to pay the monthly dues upon their six shares of stock, of $100 each, sold to said association on the 17th day of March, 1891, at the rate of seventy-five cents per share per month, and an annual interest of five per cent., payable monthly, and an annual premium of five per cent., payable monthly, together with all fines and assessments that may be assessed against said shares herein by reason of any default of said shareholder in any of the stipulations contained in this mortgage.  Said monthly payment of dues, interest, and premiums shall be paid at the home office of said association on or before the last Saturday of each month, until said James Silver and Eliza Silver, their heirs, executors, administrators, or assigns shall have paid unto said association or to its certain attorneys, successors, or assigns, the just and full sum of $600, together with said interest and premiums:  Provided, that said James Silver and Eliza Silver shall in no event be required to pay said monthly payments for a period greater than seventy-eight months from the date hereof."

The language of the bond and mortgage is plain.  Appellee has, according to the uncontradicted evidence, paid to appellant seventy-nine monthly payments of dues and interest and premiums on the six shares of stock issued by appellant.  When appellee assumed the obligation of Silvers, he, in effect, became a borrowing member of appellant corporation, and he acquired all the rights said Silvers had under his contract with appellant, and became subject to the powers with which said corporation was invested, whether express or implied.  If appellant is bound by the contract entered into with Silver, then, the evidence showing, as it does, a full compliance with the terms of that contract upon

the part of appellee, it would defeat appellant's action. But it is contended by appellant's counsel that the contract was one which was not within the power of appellant to make,— that it is *ultra vires*,—because it is such a contract as destroys the mutuality which must exist between the members of a building and loan association. "The doctrine of *ultra vires*, no matter how interpreted, is always 'ungracious and odius.' It is looked upon with disfavor by the courts, for it enables the corporation to repudiate its contracts and take advantage of those who have dealt with it in good faith. *Prima facie*, all contracts of corporations, public or private, are valid, and it is incumbent on those who impeach them to show they are invalid." *Smith* v. *Board, etc.*, 6 Ind. App. 153. It is the established rule of law in this State that where a contract has been executed by a corporation, and fully performed according to its terms by either of the parties to it, neither party will be permitted to say that the contract was not within the power of the corporation. *Wright* v. *Hughes*, 119 Ind. 324; *Louisville, etc., R. Co.* v. *Flanagan*, 113 Ind. 488; *Chicago, etc., R. Co.* v. *Derkes*, 103 Ind. 520; *Hitchcock* v. *Galveston*, 96 U. S. 258; *Bedford, etc., R. Co.* v. *McDonald*, 17 Ind. App. 492; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62. It was said by Mitchell, J., in *Wright* v. *Hughes, supra:* "The law never sustains the defense of *ultra vires* out of regard for the corporation. It does so only where the most persuasive considerations of public policy are involved."

Appellee having fully complied with the terms of the contract, appellant will not be permitted to say the contract was *ultra vires*. But is this contract in fact *ultra vires*? It is a contract by a private corporation. It is not forbidden by any statute, and it is not immoral in itself. In *Lime City, etc., Assn.* v. *Wagner*, 122 Ind. 78, the Supreme Court of this State held that a contract in all respects like the one in this case was a valid contract, and that when the borrower had paid the stipulated number of payments mentioned in

his obligation to the association, his debt was extinguished. Elliott, J., in delivering the opinion of the court, said: "All members are on an equal footing, for those who do not borrow reap all the profits that accrue beyond the face of their stock, but if loss occurs they must bear it; on the other hand, the borrower can, at the utmost, get nothing more than the value of his stock no matter how generous the profits; if, however, loss occurs he is safe, for, at the expiration of the limited time, he is discharged from his obligation although losses may have been sustained which greatly depreciate the stock. If the borrower can secure no profit he can lose nothing, because his stock cancels his debt." We think this is equity, sound reasoning, and good law. When the borrower has paid all which his contract says he shall pay, the investor should not be heard to complain because, perhaps, by bad management, or the inability to place the association's funds profitably, the returns are not as were expected or represented.

Appellant contends that the case of *Lime City, etc., Assn.* v. *Wagner, supra,* was criticised and distinguished in the later case of *Wohlford* v. *Citizens, etc., Assn.,* 140 Ind. 662, 29 L. R. A. 177. We do not attempt to determine whether the two last mentioned cases are conflicting. The first case is cited in the second case as being authority in cases of its class, and to that class this case undoubtedly belongs. The two cases cited and relied upon by appellant, *King* v. *International, etc., Union,* 170 Ill. 135, 48 N. E. 677, and *Bertche* v. *Equitable, etc., Co.,* 147 Mo. 343, 48 S. W. 954, are not controlling for two reasons: First, because they conflict with the decisions of our own courts, and second, they are both based upon statutes which expressly prohibit building associations from entering into contracts like the one in suit. We find no error. Judgment affirmed.