JOSEPH STRAUSS v. MUTUAL RESERVE FUND LIFE ASSO-
CIATION.

(Decided June 9, 1900.)

*Contract of Life Insurance—Alteration of Terms by the
Company—Measure of Damages—How Computed—
Proxy to Represent Stockholder—How Construed.*

1. A mutual life insurance company, by whatever name called, after
    entering into a contract of insurance with one of its members
    and receiving large sums thereunder, can not without that
    member's consent so alter the contract as to practically destroy
    its value.

2. Where such member refuses to comply with the altered terms
    and to pay the increased assessment imposed thereby upon his
    stock, and the company ceased and refused to recognize him
    as a member on account of his having refused to pay such
    excessive and invalid assessment, the company becomes liable
    to him in damages to be measured by the amount of premiums
    and dues paid by him, with interest thereon from date of each
    payment.

3. It is quite common for members of an association to send their
    proxies by request to the secretary or president in order to
    permit a meeting to be held; but it is not to be supposed, that
    by any such formal act, they intend to waive their vested
    rights, or to release the association from its contractual obli-
    gations.

CIVIL ACTION for wrongful cancellation of a policy of life
insurance, tried before *Hoke, J.,* at February Term, 1899, of
CRAVEN Superior Court, a jury trial being waived, and his
Honor passed upon the facts as well as the law. Upon the
facts found, judgment was rendered in favor of plaintiff,
Joseph Strauss, for $1,990.39, and interest on $1,379.46 from
February 12, 1899, and costs.

There were two other cases against the same defendant, in
*consimili casu,* dependent upon substantially the same facts.

No. 2. E. S. Street against same defendant.

His judgment was for $392.26 with interest on $265.63 from February 12, 1899, and costs.

No. 3. E. G. Hill against the same defendant.

His judgment was for $554.02 with interest on $387.55 from February 12, 1899, and costs.

The defendant appealed in all three cases. The essential facts, applicable to all three of the cases, appear in opinion.

## No. 1.

*Messrs. Shepherd & Busbee, J. W. Hinsdale,* and *Sewell Tyng,* for appellant.

*Mr. W. W. Clark,* for appellee.

DOUGLAS, J. This is an action brought to recover damages for the alleged wrongful cancellation of a policy of insurance. The record comprises over 500 pages, with a large number of insertions, amounting in the aggregate to perhaps 600 pages of printed matter. The case was fully and ably argued at length, and we have been favored with well-prepared and exhaustive briefs. And yet we see but one simple point essential to the determination of the case: Can a mutual association, by whatever name it may be called, or whatever may be its purposes, enter into a contract with one of its members, and after receiving large sums upon said contract alter its essential terms without the consent of the member, so as practically to destroy its value? We think not. The plaintiff became a member of the plaintiff association in 1883, and received a policy in the form of a certificate of membership, wherein it was expressly agreed that assessments should "be made upon the *entire membership* in force at the date of the last death for such a sum as the executive committee may

deem sufficient to cover said claims, the same to be apportioned among the members according to the *age of each member,* as per table endorsed," on said certificate.

It appears from the findings of fact that the plaintiff paid all demands made upon him up to the year 1898, and call number 96. This last call he refused to pay on the ground that it was exorbitant and contrary to the express terms of his policy. It seems that by successive resolutions, none of which were amendments to its constitution, the association has placed in a separate class all members who entered prior to 1890, and requires them to pay on the basis of the age attained by each at the date of each assessment; while other members continue to be assessed only as of their age of entry. That the result of such discrimination is injurious to the plaintiff clearly appears from the 16th, 18th, 21st and 22d findings of fact as follows: Sixteenth * * * That since the last resolution of 1898, the plaintiff and all who joined said company prior to 1890, and who held policies similar to plaintiff's, were assessed at their full attained age at rates applicable to such age, whereas persons who became members since 1890, and who held policies under what is styled the ten-year class and the five-year class, are only assessed at their age of entry, and *plaintiff is thereby assessed at a higher amount than if the entire membership were assessed at rates of their attained ages."*

"18th. That call number 96, made on plaintiff in 1898, and pursuant to the resolutions of said year, is larger in amount than it would have been, had all the members of the association been assessed at their full attained ages."

"21st. That the present value of plaintiff's policy, assuming that the rates were properly established and the members lawfully classified, was at the time he ceased to be a member of said company *only a nominal sum,* as by said classification

and rating the amount of policy discounted to such time would not exceed the present value of premiums which would be due and payable for the period of plaintiff's expectancy."

"22d. That if the entire membership of the company had been rated and assessed at their attained ages and no distinction made among the classes, then the present value of plaintiff's policy would be more than the present value of the premiums, and the *policy have a substantial present value,* but there are no data given from which said damage can be estimated or even approximated."

Upon his findings of fact, the Court below concluded as matter of law that the assessment made in pursuance of the resolutions of 1898 were "in violation of defendant's constitution, and excessive and invalid;" that the defendant, having ceased and refused to recognize the plaintiff as a member on account of his having refused to pay such excessive and invalid assessment, had broken its contract, and had become liable to the plaintiff in damages to be measured by "the amount of premiums and dues paid by plaintiff prior to call 96 with interest thereon from date of each payment." Judgment was rendered accordingly. In it we see no error.

All that we decide in the present case is that the defendant has violated its contract with the plaintiff in a material matter, whereby the plaintiff, having suffered substantial injury, is entitled to substantial damages. We do not decide that a mutual insurance company, or any other kind of insurance company, can not issue policies of divers kinds and classes if so authorized by its charter; nor do we decide that a member of a purely mutual association is not bound by all reasonable by-laws and changes lawfully made therein. We are not considering the enforcement of a contract inequitable on its face, but the violation of a lawful contract by attaching thereto, without the consent of the plaintiff, conditions which

utterly destroy its value. It is evident that if the resolution of 1898 is binding upon the plaintiff, he would in any event be eventually forced out of the company by the constantly increasing premiums. There is one fact that does not clearly appear from the record and upon which counsel themselves seem to differ, which, while not essential to the determination of this case, seems worthy of notice:

On the hearing it was contended that the defendant association had the right to subsequently rearrange its members into classes so as to make each class bear the burden of insuring its own members. If by that, the association claims the right to place all its members who entered before 1890 into a distinct class entirely separate from the other members, and make them raise exclusively among themselves enough to pay all the death claims that may occur among their own number, we can not admit the right unless such was the understanding when the original contract was made.

What would be the result? Suppose certain men start a mutual association and support it through all its infant struggles into a vigorous and enlarged growth. In course of time the new members would naturally outnumber the old ones. Suppose they should say to the old members: "You are getting old and therefore your insurance is more costly than ours; we will place you in a class by yourselves and make you insure each other without any help from us; it is true you have borne the heat and burden of the day, and we are resting in the shade of the tree you have planted, but that makes no difference to us; insure yourselves or leave." Of course as one by one died off, the burden would be greater upon the survivors, as a death claim of $1,000 bears more heavily upon twenty men than it would upon a hundred. Finally two would be left. When one died, the other would have to pay his entire policy, and then pay his own policy

at his own death. Would this be insurance, and could it be said that any claim, which would lead to such a result, is sound in principle? It may be that the association has provided for such cases, but it is apparent that if any class of men is set apart and no new blood permitted to enter, it will eventually die out. If a man voluntarily goes into such a contract with his eyes open, we are not inclined to help him, but his valid existing contract can not be changed into such a contract without his consent. Whatever may be the power of a mutual association to change its by-laws, such changes must always be in furtherance of the essential objects of its creation, and not destructive of vested rights.

It is admitted that the measure of damages followed by the Court below is the established rule in this State. *Braswell v. Insurance Co.,* 75 N. C., 8; *Lovick v. Life Association,* 110 N. C., 93; *Burrus v. Insurance Co.,* 124 N. C., 9. But it is contended that this rule was established purely in contemplation of old line companies, and was not intended to apply to mutual associations. Whatever may have been the inception of the rule we see no better one to adopt, and, as at present advised, must follow our own precedents. The judgment of the Court below is

Affirmed.

## No. 2.

E. S. Street against same defendant. Same counsel appearing.

DOUGLAS, J. This case was argued with that of *Strauss v. Mutual Reserve Fund Life Association,* and as it involves the same principles and facts almost identical, it is governed by the decision in that case. The judgment is

Affirmed.

E. G. Hill against same defendant. Same counsel appearing.

DOUGLAS, J.    This case was argued with those of Strauss and Hill against same defendant.    As it involves the same principles of law and, with one exception, facts practically identical, it is governed by that decision.    It appears that the plaintiff was present by proxy when the objectionable resolution was passed, but that fact does not affect our opinion.    It is quite common for members of an association to send their proxies by request to the secretary or president in order to permit a meeting to be held; but we can not suppose that, by any such formal act, they intend to waive their vested rights, or to release the association from its contractual obligations. The judgment is

Affirmed.