ELIZABETH FIELD v. EASTERN BUILDING AND LOAN ASSOCIATION, Appellant.

**Building and Loan Stock:** CONSTRUCTION OF CONTRACT BY BUYER. The by-laws of a building and loan association provided that the certificate of stock, in connection with the application and the by-laws of the association, formed the contract between itself and its members. They required a monthly installment of 75 cents on each share until fully paid, and provided that a payment of $100 per share, which had been in force till maturity,

should be accepted as full payment therefor. , A certificate of stock stated that it matured at the end of 78 months, and that at the end of that period the company would pay the par value of each share upon compliance with the conditions and by-laws referred to, and all rules and regulations of the association. *Held*, that a member was justified in assuming that the par value of the share would be paid at the end of 78 months, and that she was not required to continue making payments until the amount paid in, plus the earnings, equaled the par value.

*Amendment of by-laws.* When the certificate of stock in a building and loan association provided that the by-laws and conditions printed thereon were a part of the contract, without any reservation as to amendments thereto, a change in the by-laws of the company after the issuance of the stock could not be considered in construing the contract between the parties.

PLEA OF ULTRA VIRES: *Estoppel.* Where a shareholder in a building and loan association had paid in full the stipulated sum, in consideration of which she was to receive the par value of each share at the end of a certain period, the company could not avoid such contract by pleading that such contract was *ultra vires*, being forbidden by the law of the state under which it was organized.

CONTRACT WITH SHARE HOLDER. *Inability to pay others no defense.* A building and loan association made up of small stockholders from all over the United States, which required each applicant for stock to name the secretary of the company as his proxy to vote at all meetings, subject only to the right to appear and vote in person, and which stipulated that no shareholder should have any claim to any interest or control of the affairs, assets, or funds of the association, except as specifcally provded, could not avoid its contract with one shareholder by claming that it might not be able to meet its obligations to others.

*Contract to sue in state of associations' incorporation—Void.* A provision in a contract between a foreign building and loan association and a resident of this state requiring all actions against the association to be brought in the state of the company's incorporation was void, as opposed to the settled policy of this state, as indicated by Acts 26th General Assembly (Code 1897, chapter 13, title 9), subsequently passed, requiring foreign building and loan associations to consent that legal notice of suit against them may be served upon the auditor.

Evidence. *Parol evidence of intent in making contract to buy building and loan stock.* In an action to recover on certificates of stock in a building and loan association, it was not prejudicial error to allow the shareholder to testify as to representations made to her by the agent of the association when he took her application for stock, as the terms of the contract being misleading, it was proper to ascertain what the true intent of the parties was, under Code 1897, section 4616, which provides that, when the terms of an agreement have been intended differently by the parties, that sense is to prevail against either party in which he had reason to suppose the other understood it.

CURING ERROR IN EXCLUSION: *Excluding experts testimony on construction of foreign statutes.* Any error in excluding testimony of an expert as to the construction by the courts of a foreign state of statutes of that state under which an association was organized, and contracts made by such association, was cured by the later admission in evidence of the statutes and decisons themselves.

Assignments of Error: General statements that the court erred in failing to construe a contract, and determine the rights of a corporation under the laws of the state in which it was incorporated, are not proper assignments of error, and present nothing which can be reviewed on appeal.

*Appeal from Pattawattamie District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, MAY 23, 1902.

ACTION at law to recover an amount alleged to be due and payable upon certain certificates of stock in the defendant association. Judgment for plaintiff, and defendant appeals. *Affirmed.*

*Stone & Tinley* and *L. C. Crouch* for appellant.

*Harl & McCabe* for appellee.

WEAVER, J.—The defendant is a building and loan association incorporated under the laws of the state of New York, and the plaintiff is, and during all the time covered

by the transactions in controversy has been, a resident of Pottawattamie county, Iowa. Prior to November 14, 1892, the members of the association residing at Council Bluffs were, under its rules, organized into a local board, and on that date one Sheafe, a member and officer of said board, who is described by the defendant witness as "local secretary, collector, and solicitor," took from the plaintiff a written application for five shares of stock. Said application contains the following provisions:

"I hereby agree to abide by all the terms, conditions, and by-laws contained or referred to in the certificate of shares, and will also comply with all the rules and regulations of said association, and do also hereby, in order to facilitate the transaction of business of the Eastern Building and Loan Association of Syracuse, N. Y., make, constitute, and appoint the secretary of said association, for me, in my name, place, and stead, to appear and vote as my proxy upon any and all shares of stock at any time held by me, or standing in my name in said association, during my absence, at any and all meetings of stockholders or directors, and upon any and all matters which may properly come before any such meeting, and attorneys, one or more under him, from time to time in writing to appoint; hereby authorizing, ratifying, and confirming all that my said attorney or his substitute may do or cause to be done as such proxy by virtue hereof."

Upon this application, under date of December 1, 1892, the defendant issued to the plaintiff a certificate in the following form:

"Series No. C12.          Maturing June 1, 1899.
"Eastern Building and Loan Association of Syracuse, N. Y.
"Certificate Number, 16,961.   Number of Shares, 5.
Amount, $500.00.

"This certifies that Elizabeth Field, of Council Bluffs, county of Pottawattamie and state of Iowa, is hereby con-

stituted a shareholder of the Eastern Building and Loan Association of Syracuse, New York, incorporated under the laws of the state of New York, and holds five shares therein, of one hundred dollars each, and in consideration of the membership fee, together with the agreements and statements contained in the application for membership in the association, and full compliance with the terms, conditions and by-laws printed on the front and back of this certificate, which are hereby referred to and made a part of this contract, the said Eastern Building and Loan Association of Syracuse, N. Y., agree to pay said shareholder, or her heirs, executors, administrators, or assigns, the sum of one hundred dollars for each of said shares at the end of seventy-eight months from the date hereof, or, in case of her death prior to the expiration of seventy-eight months, the association will pay the sum of all monthly installments paid on this certificate, with interest at six per cent. per annum, payable in the manner and upon the conditions set forth in said terms, conditions, and by-laws, hereto attached. All payments under this certificate are payable at home office of the association, at Syracuse, New York, within sixty days after the acceptance and approval of satisfactory proofs. This certificate of shares is issued to and accepted by the holder thereof upon the following express terms and conditions.''

The terms and conditions attached to and made a part of said certificate are 15 in number, of which, for the purpose of this case, it is necessary to here set out only the following:

"First. The shareholder agrees to pay or cause to be paid a monthly installment of seventy-five cents on each share named in this contract on or before the last Saturday of each month until such share matures or is withdrawn. * * * Sixth. At stated periods the profits arising from interest premiums, fines, and other sources shall be apportioned among the shares in good standing. * * * Ninth.

The by-laws of the association, which are attached to and indorsed hereon, are a part of this contract, and such by-laws and this certificate are to be construed together, as a part of the contract between the association and the shareholder. * * * Fourteenth. Any action brought against this association shall be commenced within six months after filing proofs, and in the county of Onondaga and the state of New York."

The by-laws of the association, as they existed at that date, other than such as may be embodied in the 15 expressed conditions above mentioned, are not set forth in or attached to the pleadings, so far as the record discloses. In exhibit "H" of the defendant's testimony we find a transcript of by-laws,—whether in the original or amended form is not expressly stated, but we treat them as the former. They contain nothing, however, bearing materially upon the time of the maturity of the stock, other than is indicated in the certificate of stock and the conditions to which we have already referred. The plaintiff paid the regular monthly installments upon her stock for the full period of 78 months, and thereupon, claiming that, under her contract, the shares had fully matured, demanded payment accordingly, but payment was refused by letter from the secretary of the defendant reading as follows:

"Dear Madam: I am obliged to inform you that the earnings of the association have been insufficient to mature your stock in the time estimated,—seventy-eight months, —by a large margin. It therefore occupies no different position in its right than the same class of certificates issued since July, 1894, the maturity of which is estimated. If you desire to realize maturity of this stock, it will be necessary for you to continue payments thereon until such time as the earnings, plus loan-fund payments, equal one hundred dollars per share."

Thereupon, full payment of the 78 monthly installments having been completed, suit aided by attachment,

was begun in the Pottawattamie district court. By its answer the defendant admits the issuance of the certificate to plaintiff, but denies that the stock had matured or become payable when this action was begun. Further answering, it sets up plaintiff's agreement, in her application for stock, to abide by all the terms and conditions of the by-laws of the association, and alleges that it was thereby agreed that plaintiff should continue to pay the specified monthly installments until the same, with accrued profits, should equal the sum of $100 for each share of stock owned by her, and that she failed so to do; that, by the laws of the state of New York, no stockholder in such association has any right to demand or receive from the association at any time anything more than the amount of payments made on such stock, with its proportionate share of profits, any provision in the certificate issued by such association to the contrary notwithstanding, and that if the certificate held by plaintiff does provide for the maturing of her stock in a fixed period, without regard to accumulation of profits, such contract is *ultra vires* and void, and the promise to pay at the expiration of 78 months is to be construed as a mere estimate of the time in which the stock would mature, and not as an enforceable contract. It is further alleged that defendant has no funds which, under its articles of incorporation, are applicable to the payment of this claim in suit. As a separate answer or plea in abatement, defendant sets up the clause in the certificate of stock which provides that any action brought against the association shall be brought in Onondaga county, N. Y. To this plea in abatement the plaintiff demurred on the ground that an agreement to oust the jurisdiction of the courts of this state, and limit all actions against defendant to its own county, in the state of New York, is contrary to public policy and void. The demurrer being sustained, defendant elected to stand upon said count, and refused to plead further in respect thereto. Plaintiff, by way of reply,

says that by reason of the express language of the contract between her and the defendant, as well as by the representations of the defendant's agents, she was led to believe and did believe and understand said contract as an unqualified agreement by defendant to pay the full face value of the stock in 78 months; that defendant knew or· had reason to know that she so understood the terms of their said contract, and is therefore now estopped to plead or rely upon any other construction of its terms.    Upon the issues thus joined, trial was had to the court without a jury.    The evidence tended to show that the party taking plaintiff's application for stock represented to her that it would mature, and she would receive its full face value, of $100 per share, upon the expiration of 78 months from that date, and the fulfillment of her agreement to pay the regular monthly installments during that period; that payment of said 78 installments had been duly made; and that thereafter demand of payment had been made by the plaintiff, and refused by the defendant.    Defendant introduced in evidence its articles of association in force at the date showing that it was organized at Syracuse, N. Y., under the laws of that state, for the purposes stated in its articles and by-laws as follows:

"This association is formed for the purpose of purchasing real estate for the erection of buildings or other improvements, and the improvement of lands for aiding in acquiring or improving real estate, or removing incumbrances thereon, by means of advances for accumulating a fund for the benefit of members who do not obtain advances, and for the purpose of conducting the general business of a building and loan association.    *    *    *    Its object is to afford its members a safe and profitable investment of their savings, to facilitate the purchase and improvement of real estate, and provide the advantages usually expected from savings banks and other institutions of like character."

These articles prescribe the entrance fee to be paid by subscribers to the stock, the monthly installment upon each share, the transfer fee, the fines for delinquency in payments, the sale of the stock for arrearages, the manner of obtaining loans from the association, and the conditions upon which the stock may be withdrawn before maturity. They also provide that "the amount to be paid to the owners of shares at maturity shall be $100 per share," but no time is fixed or estimated for the maturity of the stock, nor is there any express provision as to the form or substance of the certificate to be issued to the stockholders. Defendant further showed that on the 14th day of May, 1894, some two years after plaintiff subscribed for her stock, the association amended its articles of incorporation, providing, among other things, that "installment stock shall mature and be payable when the dues paid thereon, with the profits and credits apportioned thereto, shall equal $100 per share." From defendant's books it appeared that, during the 6½ years following the issuance of the certificate to the plaintiff, she paid the defendant the monthly installments agreed upon, to the aggregate amount of $292.50 and that the "book value" of the stock was then $292.56. This book value, according to the defendant's contention, was all for which it could be held liable in any event, and then only when plaintiff's application for withdrawal should be reached in the order of its filing, and when one-half of the monthly receipts from stock payments and dues should be found sufficient for that purpose. Defendant also put in evidence the statutes of New York under which the association was organized, and certain decisions by the courts of that state as to the nature of the contract between such associations and its members. Upon the conclusion of the trial the district court entered a judgment for plaintiff for the face value of the shares held by her.

I.. The errors assigned upon the admission of evidence are as follows: Plaintiff was permitted to testify as to representations made to her by Sheafe, when he took her application for stock, concerning the time when the stock would mature, and also to state that Sheafe was then acting as defendant's agent. There was no prejudicial error in allowing these answers. Sheafe's agency is shown beyond question from other testimony, and in view of the issues made, and especially of the estoppel pleaded in the reply, it was proper to show what representations were made by him as an inducement to her to enter into the contract. If we assume defendant's construction of the language of its contract to be correct, it must be admitted that its meaning is concealed under a form of words which are ambiguous and misleading to the last degree, and presents a case where the court may look to all the circumstances surrounding its execution to ascertain whether or not the terms of the contract "have been intended in a different sense by the parties to it," and, if so, whether the defendant had reason to suppose that plaintiff understood it in the sense now asserted by her. Code 1897, section 4617; *Oil Co. v. Montague*, 65 Iowa, 67.

Complaint is also made that appellant's counsel was not permitted to testify, as an expert, how the courts of New York have construed contracts like the one in suit, and the interpretation placed by such courts upon the statutes under which the association was organized. If there was any error in these rulings (which we do not decide), it was cured by the fact that later in the trial the statutes of New York and the decisions of the New York courts were themselves admitted in evidence.

II. It is next urged, under several assignments of error, that the contract between plaintiff and the association was not an agreement to pay the stock in full at the end of 78 months. Let us see. If we look to the definition adopted by appellant in its by-laws, we find it there

stated that "the terms and conditions expressed in the certificate of stock, in connection with the application for membership and the by-laws of the association, form the contract between the association and each shareholder therein." Taking these constituent parts of the contract in the order mentioned, we find at the very beginning or head of the certificate the words "Maturing June 1, 1899." In the body of the instrument the obligation assumed by the association is stated as follows: "And in consideration of the membership fee, together with the agreements and statements contained in the application for membership, * * * and full compliance with the terms, conditions, and by-laws printed on the front and back of this certificate, which are hereby referred to and made a part of this contract, the said Eastern Building and Loan Association of Syracuse, New York, agree to pay said shareholder the sum of one hundred dollars for each of said shares at the end of seventy-eight months from the date hereof." Certainly here is a clearly expressed agreement, not simply to mature the stock, nor to apportion profits, more or less, but to "pay the sum of one hundred dollars for each of said shares at the end of seventy-eight months," unless masked somewhere within the "terms and conditions" therein referred to is to be found something which robs these words of their ordinary and accepted meaning, and makes them a mere bait with which to entrap the unwary. The next document which is said to make up a part of the contract is the applicaton for shares. It contains no statement or reference of any kind concerning the time when the stock is to be paid or redeemed by the association, and the only language there employed which can be claimed to have even a remote bearing upon this controversy is plaintiff's undertaking "to abide by all the terms, conditions, and by-laws contained or referred to in the certificate, and to comply with all the rules and regulations of said association." This

in no manner enlarges or restricts the interpretation of the terms of the certificate. Turning then to the by-laws, the only other writing to which the certificate directs our attention, and the provisions therein contained having express reference to the maturity of the stock, are (1) that shareholders shall pay or cause to be paid a monthly installment of 75 cents on each share named in their certificate until the same shall be fully paid; and (2) that a payment of $100 per share, which has been in force till maturity, shall be accepted as full payment therefor. The first of these provisions is in substance repeated, as we have before noted, in the terms and conditions upon the face of the certificate itself in the following words: "The shareholder agrees to pay or cause to be paid a monthly installment of seventy-five cents on each share named in the contract, the same to be paid on or before the last Saturday in each month, until such share matures or is withdrawn." The foregoing stipulations include, so far as we can discover, every reference made in the certificate, application, and by-laws to the maturity of the stock. In no place is the date or time of such maturity mentioned except in the certificate, where, as we have seen, appellant, in so many words, agreed to pay $100 for each share at the end of 78 months, conditioned only upon the performance by plaintiff of her part of the contract. True, the by-laws bind her to pay the stipulated monthly installment until the maturity of the stock; but the contract itself, in the provision to which we have just referred, defines what is meant by "maturity." When the appellant by its by-laws informs the member that the "certificate, in connection with the application for membership and the by-laws of the association, forms the contract" between them, the member is justified in relying thereon, and may rightfully demand that the promises therein found shall in good faith be kept. The contract is of appellant's own framing. It is not an informal, hastily prepared memorandum, but is part of a

carefully devised plan of business.    It requires too severe a strain upon human credulity to believe that the language used in the certificate was intended to be understood by applicants for the stock as a mere estimate of the time when the net profits, added to the stockholders' payments, would be equal to $100 per share.    If it was intended as an estimate, it was an easy thing to say so.    The great body of the patrons of such associations is made up of men and women of small means and limited experience.    Not one in a hundred of them, though of fair average intelligence and caution, would put upon the contract any other construction than plaintiff did.    We must assume, therefore, that in thus preparing its contract the appellant intended to bind itself to the payment of the stipulated sum in the stipulated time, or it deliberately framed the instrument to deceive prospective members with an apparent promise to that effect.    Taking the more charitable view that the agreement was intended to mean what it appears to say, the subsequent course of the appellant can be explained only upon the theory that the enterprise did not prove as remunerative as was hoped, and its promoters therefore sought, by amending its constitution and by-laws, to modify the construction of its contract with its members, and limit the measure of its liability thereunder to a mere distribution of profits,—a labor which, in the present instance, required no Herculean effort.    There can be no doubt that the language of the contract purports an agreement by appellant to pay the definite sum of $100 per share of stock in consideration of 78 monthly installments of 75 cents; but if that construction were open to question, and somewhere in the "terms, conditions, and by-laws" of the association one may find a clause which gives color to the theory of the defense, it presents a fair case for the application of the statute already cited (Code, section 4617,) which provides, "When the terms of an agreement have been

intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." This rule is not applicable to verbal contracts alone. *Cobb v. McElroy*, 79 Iowa, 603. And while it does not permit the introduction of parol evidence to vary a written contract by proof of an intent contrary to the plain terms of the writing (*Walker v. Manning*, 6 Iowa, 519), yet where, by reason of the ambiguity of the instrument, or the peculiar circumstances of the transaction, it is manifest that one party understood its terms in a particular sense, and the other party knew or had good reason to suppose that such was the understanding, that sense will be adopted by the court, and the contract enforced accordingly. *Chicago Lumber Co. v. Tibbles Mfg. Co.*, 80 Iowa, 369. The courts of last resort in several states have had occasion to pass upon this contract, and hold that the construction put upon it by plaintiff is right. *Williamson v. Association*, 54 S. C. 582 (32 S. E. Rep. 765, 71 Am. St. Rep. 822); *Welling v. Association*, 56 S. C. 280 (34 S. E. Rep. 409); *Association v. Bratton*, 24 Ind. App. 654 (56 N. E. Rep. 105); *Hammerquist v. Loan Co.*, — S. D. — (87 N. W. Rep. 524); *Association v. Wilkins*, — S. D. — (85 N. W. Rep. 994); *Richards v. Insurance Co.*, 89 Cal. 170 (26 Pac. Rep. 763). It is true that some of the *nisi prius* and intermediate courts of New York and the courts of certain other states have reached a conclusion upon the question in harmony with appellant's contention. *O'Malley v. Association*, 92 Hun, 572 (36 N. Y. Supp. 1016); *Daley v. Association*, 172 Mass. 533 (52 N. E. Rep. 1090). But the very fact that learned courts are led to such antagonistic conclusions from the same premises relieves the plaintiff, unlettered in the law, from any charge of negligence or inexcusable ignorance in interpreting the contract as she did. It is perfectly evident that plaintiff, in taking the stock, believed that the association was agreeing to pay her its face value at the end of the

stated period. It is equally evident that the association, through its officers, had the best of reasons to suppose that such was her interpretation of their agreement; and the statute, as well as the plainest principles of justice, requires that such understanding shall prevail.

III. Having determined the nature of the original contract between the parties, we have next to inquire whether the subsequent amendments to its articles and by-laws have the effect to relieve the corporation from its promise to pay the face value of its stock. It will be observed that the by-laws and conditions referred to in the certificate as a part of the contract are "the by-laws and conditions printed upon the front and back of this certificate," and later in the same instrument they are again pointed out as "the by-laws of this association, attached hereto and indorsed hereon." In other words, it is the by-laws then existing, and indorsed in extenso upon the certificate, which enter into and form a part of the contract. There is nowhere any reservation to the association of a right to modify such contract by an amendment to its by-laws, nor any consent by the plaintiff to be bound by such amendment. This court has already held that in the absence of such express reservation on the one part, or express consent on the other, a change in the by-laws of a mutual association, affecting its contract with its members will not be given retroactive effect. *Hobbs v. Association*, 82 Iowa, 107; *Carnes v. Association*, 106 Iowa, 281; *Farmers' M. H. Ass'n v. Slattery* 115 Iowa, 410. To the same effect see *Pokrefy v. Association*, 121 Mich. 456 (80. N. W. Rep., 240); *Insurance Co. v. Connor*, 17 Pa. 136; *In re Norwich & Norfolk Provident Permanent Ben. Bldg. Soc.* 1 Ch. Div. 481. It is repugnant to every accepted definition of "contract" that one party thereto shall be clothed with a right to repudiate its obligations in whole or in part, while holding the other to strict compliance with its terms; and if, as has been held, such anomalous right may be

reserved, we are disposed to confine it to cases where the reservation is unequivocally expressed in the original undertaking. *Sieverts v. Association*, 95 Iowa, 710. In *Becker v. Society*, 144 Pa. 232, (22 Alt. Rep. 699, 27 Am. St. Rep. 624,) the court, discussing a similar attempt to limit contract liability by an amendment to the by-laws of a corporation, says: "This was certainly an easy mode of relieving the society from its obligation, and, if successful, will doubtless be followed by other similar associations. The difficulty in the way of this convenient mode of paying debts is that it is repudiation, pure and simple. The argument that the plaintiff, being a member of the society, is bound by the by-laws, does not meet the difficulty. It may be a good by-law as to future cases, but at the time it was passed plaintiff was something more than a member. He was a creditor whose rights had previously attached, and those rights cannot be swept away by such a scheme as this by-law." In a similar case the supreme court of Oregan says [*Wist v. Grand Lodge*, 22 Or. 271, (29 Pac. Rep. 610, 29 Am. St. Rep. 603)]: "There is no power in the society to amend or enact laws which shall work a repudiation of its obligation. It resides in the society for the purpose of carrying out the business for which it was formed, and, when the power is expressly reserved in the charter, it is not to be construed as intended to reserve the power to avoid its contracts, or work the destruction of vested rights." To hold otherwise would be destructive of some of the most fundamental principles of the law of contracts, and announce a doctrine which is not conducive to sound morals. In our judgment, therefore, the changes or amendments made in defendant's by-laws after plaintiff became a stockholder cannot be considered in construing the agreement between them. See, directly in point: *Peterson v. Gibson*, 191 Ill. 365 (61 N. E. Rep. 127, 54 L. R. A. 836); *Covenant Mut. Life Ass'n v. Kentner*, 188 Ill. 431, (58 N. E. Rep. 966); *Strauss v. Association*, 126 N. C. 971,

(36 S. E. Rep. 352, 54 L. R. A. 605, 83 Am. St. Rep. 699); *Ebaugh v. Association*, 58 S. C. 83 (36 S. E. Rep. 535).

IV. Is the contract void as being *ultra vires?* Appellant cites us to the statutes of New York governing building and loan associations of that state, by which the payment of dividends, except from profits, is forbidden, and the violation of such provision is made a misdemeanor, and insists that, even though the contract does provide for the payment of the stock in full at the end of a stated period, the agreement is unlawful, and cannot be enforced. The plea thus advanced is unconscionable, and cannot be sustained by the court. We have held that the plea of *ultra vires* avails only where the contract is wholly executory, and that, where the consideration for its agreement has been received, a corporation is estopped to allege its want of power to contract. *Thompson v. Lambert*, 44 Iowa, 239; *Humphrey v. Association*, 50 Iowa, 607; *Church v. Johnson*, 93 Iowa, 544. This principle is also recognized and enforced in New York, the home of the defendant association. *Whitney Arms Co. v. Barlow*, 63 N. Y. 62 (20 Am. Rep. 504); *De Groff v. Thread Co.*, 21 N. Y. 124; *Match Co. v. Roeber*, 106 N. Y. 473 (13 N. E. Rep. 419, 60 Am. Rep. 464). Plaintiff has paid in full the stipulated sum in consideration of which she was to receive $100 per share for her stock; and appellant, while retaining the benefits of its contract cannot escape the obligation thus assumed by pleading its own offense against the law. In *Wright v. Hughes*, 119 Ind. 324 (21 N. E. Rep. 907, 12 Am. St. Rep. 412), it is well said: "The law never sustains the defense of *ultra vires* out of regard for the corporation. It does so only when the most persuasive considerations of public policy are involved." See, also, to the same effect, *International B. & L. Ass'n v. Bratton*, 24 Ind. App. 654 (56 N. E. Rep. 107); 5 Thompson Corporation, section 6025. Sound public policy cannot be promoted by offering a premium for wrongdoing

and such would be the effect of an authoritative announce-
ment that a corporation may send its agents out among the
people, inducing them to invest their small savings in its
stock, and then, having received the agreed consideration,
escape liability because it has promised to do more than it
was legally authorized to do. With that doctrine estab-
lished, it would be to the interest of every corporation to
exceed its lawful powers in every contract, as the readiest
means of paying its debts without depleting its assets.

V. The eighth assignment of error is in the following
words: "Eighth. In holding that the contract sued on
was not a New York contract, and in failing (a) to con-
strue said contract according to the provisions of the stat-
ute of the state of New York under which defend-
ant is incorporated; (b) to construe said contract
according to the laws and decisions of the state of
New York; (c) to determine the rights of plaintiff in de-
fendant corporation under Exhibit A according to the
statute of the state of New York under which defendant is
incorporated, and the laws and decisions of that state in
relation thereto." This is not an assignment of error in
the sense in which that term is used in our practice, but
is, rather, a criticism of the line of reasoning which coun-.
sel assumes that the trial court must have pursued in
reaching the judgment announced. It refers to no specific
rulings to which an exception was saved, and presents
nothing for review by this court. The fact that the judg-
ment was against defendant does not necessarily imply that
the court refused to consider the statutes of New York, or
the decisions of its courts. In the absence of evidence to the
contrary, the trial court was justified in assuming that New
York and Iowa have the same statutory rule for the con-
struction of contracts where the terms thereof are not un-
derstood by both parties in the same sense; and, applying
that rule, plaintiff may have been found entitled to re-
cover without in any manner challenging the correctness

of the abstract propositions of law announced by the decisions upon which counsel rely. The court below evidently found the fact to be that the laws of New York are not in conflict with the construction here placed upon the contract in suit, and such conclusion is not without sufficient support. *Eastern B. & Loan Ass'n v. Ebaugh*, 185 U. S. 114 (22 Sup. Ct. Rep. 566, 46 L. Ed. —). The ninth assignment of error is open to the same objection we have noted in respect to the eighth, and need not be specifically considered.

VI. Counsel press upon our consideration the claim that defendant is a mutual corporation, and therefore in allowing plaintiff to recover, she is given an unjust preference over other stockholders. The "mutual" features of this association are of the most shadowy and unsubstantial character. By its plan of business, every applicant for stock is required to name the secretary of the corporation as his or her attorney or proxy, with full power to vote such stock as he may see fit at any and all meetings of stockholders and board of directors, subject only to the right of the stockholder to appear and vote at such meetings in person. With its membership made up of small holders of stock scattered throughout the United States, this means that the absolute and unqualified control of the corporation is at all times in the hands of a few officers, and the individual member is as voiceless and uninfluential as the dead, in the corporate management. To further limit the rights of the shareholder, the certificate, after stating the terms of the contract as we have hereinbefore shown, adds, among others, the following condition: "Twelfth. No shareholder shall have any claim to any interest in the affairs, assets, or funds of this association, nor the control of them, except as above specifically set forth, and assumes no further liability of any kind whatsoever, except as hereinafter described." Courts of respectable authority have held that a condition of this kind

attached to membership in a building and loan association destroys or negatives the idea of mutuality, and that such an association cannot claim the rights or immunities provided by law for mutual companies. *Pioneer Sav. L. Co. v. Peck* 20 Tex. Civ. App. 111 (49 S. W. Rep. 160); *Loan Co. v. Pancoast* 17 Tex. Civ. App. 312; (43 S. W. Rep. 280); *Hammerquist v. Loan Co.* — S. D. — (87 N. W. Rep. 524); *Association, v. Wilkins* — S. D. — (85 N. W. Rep. 994). The practical workings of a scheme of this kind are well illustrated in the case before us. The plaintiff, as required by her contract, has paid the regular monthly installments upon her stock to an aggregate amount of $292.50. On June 1, 1899, this investment, when increased by its proportionate share of earnings and profits, was reported by defendant as worth $292.56,—an increment of 6 cents in $6\frac{1}{2}$ years, under a management which counsel describes as "a perfect system of mutuality and reciprocity." But even that value is more or less mythical. It is simply "book value," so called; and, if appellant's contention is correct, plaintiff's only right is to go on with the monthly payments, or file her claim with the secretary for withdrawal. The claim being thus filed, the book value of her stock is subject to a withdrawal fee of $1 per share, and the remainder will be paid some time in the indefinite future, when it is reached in the order of its filing, and when one-half of the net receipts of the monthly installments shall produce sufficient funds for that purpose. Of such a system of mutuality and reciprocity we may well say, as was said of the lion's cave in the old fable, "*nulla vestigia retrorsum*"—the tracks all lead in, and nothing comes out alive save the lion himself. There is nothing in the nature or organization of the defendant which can or ought to relieve it from the performance of its contracts. The fact, if it be a fact, that in the end it may not be able to pay the claims of other members, is a matter we cannot consider. We are not charged with the duty of winding up

the affairs of the corporation, or settling the rights of members upon a final distribution of its assets, if any. Our only duty at this time is to construe the contract on which suit is brought, and to enforce it accordingly. It is proper, also, to add that the expressed objects and purposes of this association, as hereinbefore quoted from its articles and by-laws, are much broader than is ordinarily included in the idea of building and loan associations, and there is room to doubt whether defendant is entitled to claim all the privileges and immunities which pertain to such corporations.

VII. Is the condition attached to the certificate, requiring all actions against the association to be brought in Onondaga county, N. Y., binding upon the plaintiff? We hold that it is not. We regard such a provision as opposed both to general principles of public policy and to the settled policy of this state. In construing a very similar provision in a mutual insurance company's policy, Shaw, C. J., said: "It is a well-settled maxim that parties cannot by consent give jurisdiction to courts where the law has not given it, and it seems to follow from the same course of reasoning that parties cannot take away jurisdiction where the law has given it." *Hall v. Insurance Co.*, 6 Gray, 185; *Nute v. Insurance Co.*, 6 Gray 174. As applied to defendant, it amounts to a covenant on the part of stockholders who are nonresidents of New York not to seek the protection of a court of justice against the corporation under any circumstances, for the right to sue in a distant jurisdiction involves such trouble, expense, and embarrassment as to be without any practical value, and few, if any, can avail themselves of it. The importance of this feature of the situation, in view of the rapid multiplication during recent years of so-called mutual and co-operative associations which extend their business far beyond the state of their origin, and send their canvassers into the remotest neighborhoods, has not

escaped the attention of our legislature. A statute enacted by the Twenty-sixth General Assembly, and embodied in chapter 13, title 9, of the Code, requires every foreign building and loan association desiring to do business in this state to deposite securities with the state auditor, to make detailed yearly reports of its business within this jurisdiction, and to consent that legal notice of suit against it in our courts may be served upon the auditor with the same effect as actual personal service upon the corporation itself. These provisions are made for the benefit of Iowa stockholders, and, if it be competent for a foreign association to bind its members not to enforce their rights in Iowa courts, then every purpose sought to be subserved by the statute may be defeated. It is true that the statute referred to was not in force at the date of the contract in suit, but it is proper to consider it as tending to indicate the policy of this state in reference to foreign corporations of this character, and of the remedy to be applied in controversies between them and our own citizens. Comity between states does not require us to enforce a contract or apply a remedy which contravenes or nullifies the settled policy of our own state. *Welling v. Association*, 56 S. C. 280 (34 S. E. Rep. 409); *Pope v. Hanke*, 155 Ill. 617 (40 N. E. Rep. 839, 28 L. R. A. 568).

We conclude, therefore, that the action is maintainable in this state, and, there appearing to be no prejudicial error in the record of the trial below, the judgment appealed from is AFFIRMED.