DAVENPORT MACHINE & FOUNDRY COMPANY, A DIVISION OF MIDDLE STATES CORPORATION, an Iowa Corporation, Appellant,

v.

ADOLPH COORS COMPANY, a Foreign Corporation, Appellee.

No. 65167.

Supreme Court of Iowa.

Jan. 20, 1982.

Carol A. H. Freeman of Lane & Waterman, Davenport, for appellant.

R. Richard Bittner and Robert D. Lambert of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, McGIVERIN, and SCHULTZ, JJ.

UHLENHOPP, Justice.

This appeal involves a question of the jurisdiction of Iowa courts over a foreign corporation. No claim is made that the corporation qualified to transact business in this state under sections 496A.109, 496A.110, and 496A.112, The Code 1979.

Plaintiff Davenport Machine & Foundry Company (Foundry) is an Iowa corporation which manufactures grain dryer parts in Davenport, Iowa. Defendant Adolph Coors Company (Coors) is a foreign corporation which, *inter alia*, brews beer in Golden, Colorado, and merchandises the beer in various parts of the country including Iowa.

Coors desired to obtain certain parts for its grain dryers in Golden and to have at least some of the parts installed. It mailed fourteen purchase orders at different times to Foundry. The purchase orders were on printed forms prepared by or for Coors. They included this clause:

> Seller acknowledges that it is inducing Coors to purchase and utilize goods and/or services in connection with its brewing, sales, construction and manufacturing operations in Golden, Colorado, and is thereby transacting business with Coors in the State of Colorado. This Purchase Order shall be governed by, subject to and construed according to the laws of the State of Colorado. Any litigation concerning this Purchase Order shall be under the jurisdiction of a state or federal court located within Colorado.

Foundry manufactured the parts in Iowa and shipped them under invoices to Coors in Colorado, and also installed at least some of them. Coors mailed drafts to Foundry in payment of the invoices except for a balance of $6094.39. Coors claims that Foundry's parts or installation was defective to Coors' damage in excess of $240,000.

Foundry sued Coors in the Iowa district court in Scott County for the balance on the invoices. Coors entered a special appearance challenging the jurisdiction of Iowa courts on the grounds that Coors lacks the minimum contacts with Iowa essential for jurisdiction of Iowa courts and that the quoted clause in the purchase orders ousts the Iowa courts of the jurisdiction they might otherwise possess.

The district court held a hearing on the special appearance and then sustained it. Foundry appealed.

I. *Minimum contacts.* Coors contends that Foundry is restricted, by virtue of its position in district court, to reliance on section 617.3, The Code 1979. For present purposes that section deals with the making of a contract to be performed in whole or part in Iowa. We have held that an Iowa seller of goods to a foreign buyer cannot ordinarily subject the buyer to suit in Iowa courts. *Rath Packing Co. v. Intercontinental Meat Traders, Inc.,* 181 N.W.2d 184, 189 (Iowa 1970); *see* R. Leflar, *American Conflicts Law* § 39, at 70–71 (3rd ed. 1977).

The papers in case show, however, that the parties' trial court briefs ranged considerably beyond jurisdiction predicated solely on performance of the contracts sued on. The district court itself found that Coors sells its beer in Iowa, and Coors does not deny that it does so.

We have then the picture of a foreign corporation which does business in this state by distributing and selling its product here. We have the additional factor that the corporation enters into specific contracts for the purchase of parts from an Iowa company, to be manufactured here and shipped from this state to the foreign state and installed there. The litigation arises out of those contracts. Do these factors add up to the minimum contacts which are requisite to jurisdiction of the foreign corporation by the Iowa courts on the contracts in question under such decisions as *Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224 (Iowa 1979); *Berkley International Co., Ltd. v. Devine,* 289 N.W.2d 600 (Iowa 1980); *Larsen v. Scholl,* 296 N.W.2d 785 (Iowa 1980); *Al-Jon, Inc. v. Garden Street Iron & Metal, Inc.,* 301 N.W.2d 709 (Iowa 1981); *Svendsen v. Questor Corp.,* 304 N.W.2d 428

(Iowa 1981); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948); *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)?

■ We may assume without deciding that if Coors did not do business generally in Iowa by distributing and merchandising its product here, and that if its sole activity here was the order of these dryer parts and their installation, under the *Rath* decision Coors would have insufficient contacts to give Iowa courts jurisdiction. Coors overlooks, however, the traditional doctrine that a foreign corporation has a "presence" in a state when it "does business" there, making it amenable to the laws and courts of that state. This was the law before the enactment of the single act statutes, and it is still the law. R. Leflar, *supra*, § 39, at 68 ("Until recently, the most common basis, and in some states almost the only basis, for subjecting a nonconsenting foreign corporation to the judicial jurisdiction of a state was the fact of the corporation's 'doing business' in the state. This basis for exercising jurisdiction still exists, though in all states it has been supplemented by the more comprehensive basis of 'transacting any business in the state', applicable under the police power not only to corporations but to all persons who may be defendants."); 36 Am.Jur.2d *Foreign Corporations* §§ 473, 485 (1968); 20 C.J.S. *Corporations* § 1919 (1940).

■ If the present litigation arose out of Coors' distribution and sale of beer in Iowa, clearly Iowa courts would have jurisdiction of the suit. What is the effect upon jurisdiction of the fact that the litigation does not arise from Coors' regular line of business here, but rather from the fourteen purchase orders? The United States Supreme Court confronted a somewhat similar problem in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, *rehearing denied*, 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952). The Court upheld the jurisdiction of the Ohio courts over a foreign corporation doing business in that state although the cause of action arose wholly outside the state. The corporation was, however, doing much of its business in Ohio and in many respects had its actual headquarters there. The Court described the corporation's activity in Ohio as "continuous and systematic." 342 U.S. at 445, 72 S.Ct. at 418, 96 L.Ed. at 492. The Court stated:

The instant case takes us one step further to a proceeding in personam to enforce a cause of action not arising out of the corporation's activities in the state of the forum. Using the tests mentioned [in *International Shoe*] we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in *International Shoe Co. v. Washington*, supra (326 U.S. [310] at 318, 319, 66 S.Ct. 154 [at 159], 90 L.Ed. 103, 104, 161 A.L.R. 1057).

". . . there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.

". . . some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents. But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction.

". . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due

process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations."

*Id.* at 446–47, 72 S.Ct. at 418–19, 96 L.Ed. at 493 (citations omitted). The Court then found the corporation's continuous and systematic activities in Ohio sufficient to warrant Ohio's assumption of jurisdiction on actions arising out of activities unrelated to Ohio.

The result reached in *Perkins* has been said to represent the majority view. 20 C.J.S. *Corporations* § 1922 (1940); *but see Restatement (Second) of Conflict of Laws* § 47, Comment e (1971). *Perkins* is certainly authority for the proposition that a state is not forbidden under *all* circumstances from entertaining lawsuits against foreign corporations doing business within its borders based on transactions unconnected with that business. As applying the *Perkins* doctrine, *see Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 193 n.3 (1st Cir. 1980); *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1287 (9th Cir. 1977) ("If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities."); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir. 1977) ("The rules which emerge from these cases may be summarized as follows: If the defendant corporation has sufficient deliberate 'minimum contacts' with the forum state, a court may acquire *in personam* jurisdiction over it in actions which arise from those forum contacts. If, however, a corporation's activities in the forum are so 'continuous and systematic' that the corporation may in fact be said already to be 'present' there, it may also be served in causes of action unrelated to its forum activities."); *Quaker Oats Co. v. Chelsea Industries, Inc.*, 496 F.Supp. 85 (N.D.Ill.1980) (from case summary: "Irish corporations which did not maintain any office or facilities in Illinois but which made a large number of sales of goods to Illinois were subject to jurisdiction in Illinois in an action arising out of a sale which was not transacted in Illinois."); *Gullett v. Quantas Airways Ltd.*, 417 F.Supp. 490 (M.D.Tenn. 1975).

The instant case is weaker than *Perkins* in that Coors does not transact a major part of its regular business in Iowa and does not have its main operation here. But from its ongoing beer sales throughout Iowa, Coors would appear to have continuous and systematic activities here. We need not decide, however, whether Iowa courts could assume jurisdiction of an action arising wholly in another state on the sole basis of Coors' Iowa beer business. This case is definitely stronger than *Perkins* in that the cause of action sued on is not wholly unconnected with Iowa. Foundry is not only a local company; it received the orders here, fabricated the parts here, shipped from here, and received part payment here. Not only does Coors do business here in its main line of merchandising beer; the very parts and services on which the suit is based came from Iowa. We think that all-in-all Coors has sufficient contacts with this state to give Iowa courts jurisdiction of the present cause of action.

II. *The contract clause.* The quoted contract clause purports to restrict future litigation under the purchase orders to courts in Colorado. The issue is not whether courts in Colorado *have* jurisdiction under the clause; it is whether the clause *deprives* other courts of jurisdiction they would otherwise possess.

Traditionally Iowa has held such clauses to be unenforceable. *Field v. Eastern Building & Loan Assn.*, 117 Iowa 185, 90 N.W. 717 (1902); *see also Matt v. Iowa Mutual Aid Assn.*, 81 Iowa 135, 46 N.W. 857 (1890). Although in *Field* this court cited a subsequently enacted statute as showing Iowa policy, it came down on the side of unenforceability as a matter of judicial choice:

Is the condition attached to the certificate requiring all actions against the association to be brought in Onandaga county, N.Y., binding upon the plaintiff? We hold that it is not. We regard such a provision as opposed both to general principles of public policy and to the settled policy of this state. In construing a very similar provision in a mutual insurance company's policy, Shaw, C. J., said: "It is a well-settled maxim that parties cannot by consent give jurisdiction to courts where the law has not given it, and it seems to follow from the same course of reasoning that parties cannot take away jurisdiction where the law has given it." *Hall v. Insurance Co.*, 6 Gray, 185; *Nute v. Insurance Co.*, Id. [6 Gray] 174. As applied to defendant, it amounts to a covenant on the part of stockholders who are nonresidents of New York not to seek the protection of a court of justice against the corporation under any circumstances, for the right to sue in a distant jurisdiction involves such trouble, expense, and embarrassment as to be without any practical value, and few, if any, can avail themselves of it. The importance of this feature of the situation, in view of the rapid multiplication during recent years of so-called mutual and co-operative associations which extend their business far beyond the state of their origin, and send their canvassers into the remotest neighborhoods, has not escaped the attention of our legislature. A statute enacted by the 26th general assembly, and embodied in chapter 13, tit. 9, of the Code, requires every foreign building and loan association desiring to do business in this state to deposit securities with the state auditor to make detailed yearly reports of its business within this jurisdiction, and to consent that legal notice of suit against it in our courts may be served upon the auditor with the same effect as actual personal service upon the corporation itself. These provisions are made for the benefit of Iowa stockholders, and, if it be competent for a foreign association to bind its members not to enforce their rights in Iowa courts, then

every purpose sought to be subserved by the statute may be defeated. It is true that the statute referred to was not in force at the date of the contract in suit, but it is proper to consider it as tending to indicate the policy of this state in reference to foreign corporations of this character, and of the remedy to be applied in controversies between them and our own citizens. Comity between states does not require us to enforce a contract or apply a remedy which contravenes or nullifies the settled policy of our own state.

117 Iowa at 205–06, 90 N.W. at 724. This appears to be the majority view, although a minority exists. The following appears in Annot., 56 A.L.R.2d 300, 304 (1957):

With respect to contracts relating to future causes, most courts have refused enforcement, most often on the ground that such contracts violate public policy in seeking to oust courts other than those specified of the jurisdiction which would otherwise be theirs. However, a growing minority of the cases has taken a contrary view, holding that the contracts are not, per se, unenforceable, but on the contrary should be enforced so long as they appear, in light of the surrounding circumstances, reasonable.

*See also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (upholding clause). The American Law Institute expresses its view thus in *Restatement (Second) of Conflicts of Law* § 80, Comment *a*:

Private individuals have no power to alter the rules of judicial jurisdiction. They may not by their contract oust a state of any jurisdiction it would otherwise possess. This does not mean that no weight should be accorded a provision in a contract that any action thereon shall be brought only in a particular state. Such a provision represents an attempt by the parties to insure that the action will be brought in a forum that is convenient for them. A court will naturally be reluctant to entertain an action if it considers itself to be an inappropriate forum.

And the fact that the action is brought in a state other than that designated in the contract affords ground for holding that the forum is an inappropriate one and that the court in its discretion should refuse to entertain this action. Such a provision, however, will be disregarded if it is the result of overreaching or of the unfair use of unequal bargaining power or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the particular action. On the other hand, the provision will be given effect, and the action dismissed, if to do so would be fair and reasonable.

Referring to the attitude of the United States Supreme Court in *M/S Bremen*, the author expresses the present state of the law on this point as follows in R. Leflar, *supra*, § 52, at 100–01 (emphasis added):

This attitude has not always prevailed toward such contracts. In one case the contract sued on in Massachusetts provided that actions upon it should be brought only in Pennsylvania, where the defendant corporation had its headquarters. The Massachusetts court nevertheless entertained the action, seeming to say that jurisdiction of courts was a legal concept which for reasons of "public policy" is above and beyond the control of the parties. Actually, that is not the law in Massachusetts, nor elsewhere. Choice-of-forum contract provisions are today generally regarded as neither absolutely binding nor absolutely void, but rather as *factors which help a court to exercise its discretion on a reasonable basis as to whether its legally existent jurisdiction ought to be exercised.* The modern cases say that contracts limiting judicial jurisdiction will be respected if there is nothing unfair or unreasonable about them, but will be disregarded if they are unfair or unreasonable. They are more likely to be sustained if they relate to disputes already arisen or contemplated, but that is not a rigid limitation. They are less likely to be sustained if they appear in adhesion contracts prepared in advance by one of the parties, and will generally be disregarded if genuine inconvenience or inadequacy of remedy would ensue from them.

After consideration of *Field* and the other authorities, we hold that clauses purporting to deprive Iowa courts of jurisdiction they would otherwise have are not legally binding in Iowa. We further hold, however, that under a motion to dismiss an Iowa action without prejudice on the ground of *forum nonconveniens,* such a clause, if otherwise fair, will be given consideration along with the other factors presented, in determining whether the Iowa court should decline to entertain the suit. *See Silversmith v. Kenosha Auto Transport,* 301 N.W.2d 725 (Iowa 1981).

The proceeding is now before us on a special appearance, which challenges jurisdiction. Iowa R.Civ.P. 66. The clause in question does not deprive Iowa courts of jurisdiction, and the special appearance is not well taken. Upon remand Coors may if it chooses present a motion to dismiss or other appropriate motion asking the district court to decline to entertain the action, without prejudice to a suit in Colorado. We express no opinion at this time on whether such a motion should be sustained or overruled. If Coors does not make such a motion before answer, or if it makes such a motion but the motion is overruled, the action is to proceed in Iowa. The parties will, of course, have their usual rights of appeal.

REVERSED.