**BANKERS LEASING COMPANY, An Iowa Corporation, Plaintiff-Appellant,**

v.

**EAGLE VALLEY ENVIRONMENTAL-ISTS, INC., A Wisconsin Corporation, and Terry Ingram, An Individual, Defendants-Appellees.**

No. 85–999.

Court of Appeals of Iowa.

March 31, 1986.

Marcus F. Abels of Michael M. Sellers Firm, Des Moines, for plaintiff-appellant.

Michele A. Druker of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for defendants-appellees.

Heard by DONIELSON, P.J., and SNELL and SCHLEGEL, JJ.

DONIELSON, Presiding Judge.

The nonresident defendants, Eagle Valley Environmentalists, Inc. and Terry Ingram, filed a special appearance challenging the Iowa court's personal jurisdiction over them. The district court sustained this special appearance, and the plaintiff has appealed. The plaintiff challenges the district court's conclusion that the defendants lacked sufficient minimum contacts with the State of Iowa to confer personal jurisdiction on the Iowa court.

Eagle Valley is a Wisconsin nonprofit corporation devoted to preserving habitats for eagles in Wisconsin and Illinois. Eagle Valley's principal place of business is in Apple River, Illinois, about 50 miles from Dubuque, Iowa. Terry Ingram, a resident of Apple River, Illinois, is Eagle Valley's executive director.

Prior to 1983, Eagle Valley had purchased a photocopier from Midwest Business Products, a Dubuque, Iowa corporation. In 1983, a Midwest representative visited Eagle Valley's Illinois office and suggested that Eagle Valley lease a new photocopier of a specified model. Eagle Valley agreed to lease the new photocopier and traded its old photocopier in to Midwest. The new photocopier was delivered and installed by Midwest, but was owned by Bankers Leasing Company, a Des Moines, Iowa equipment leasing firm who bought the photocopier from Midwest. The photocopier was installed and operating before Eagle Valley learned the photocopier was owned by Bankers. Bankers contacted Eagle Valley repeatedly by mail and telephone regarding the lease terms. Eagle Valley did, however, enter into a lease agreement with Bankers. Throughout these transactions, Eagle Valley was represented by executive director Ingram. The lease agreement included a personal guaranty of payment signed by Ingram.

Bankers later filed the present suit in Iowa district court alleging that Eagle Valley had defaulted in its lease payments. Eagle Valley and Ingram responded by filing a special appearance alleging that the Iowa court did not have personal jurisdiction over them because they lacked sufficient minimum contacts with the State of Iowa. The district court sustained the special appearance and dismissed Bankers' petition. The district court noted that Eagle Valley's business was solicited by Midwest, rather than vice versa, and that all of Eagle Valley's contacts with both Midwest and Bankers occurred in Illinois. The district court characterized Eagle Valley as a "passive purchaser" which merely responded to solicitation by Iowa sellers, rather than actively seeking a transaction with Iowa sellers.

Bankers has appealed from the order sustaining the defendants' special appearance. Bankers contends that Eagle Valley and Ingram do have sufficient minimum contacts with the State of Iowa to give the Iowa court personal jurisdiction over them.

Bankers summarizes Eagle Valley's contacts with Iowa as follows: Eagle Valley has over forty members in Iowa, it leases a truck from another Iowa company, it met

its copier needs by doing business with an Iowa firm (Midwest), it knowingly signed a lease agreement with an Iowa firm (Bankers), and the lease agreement form recites that the place of contracting is in Iowa and the lease is to be governed by Iowa law.

■ We recognize that:

The principles controlling this case were succinctly stated in *Al-Jon, Inc. v. Garden Street Iron & Metal, Inc.*, 301 N.W.2d 709, 711 (Iowa 1981), as follows:

Jurisdiction under rule 56.2 is coextensive with what is permitted by the due process clause of U.S. Const. amend. XIV. *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). Therefore the only relevant issue is whether in this case personal jurisdiction over the nonresident defendant is consistent with due process. Controlling principles are delineated in *Larsen* and need not be fully repeated here. *See id.* at 787–88. Because due process is infringed unless the defendant has had sufficient minimum contacts with Iowa, we must determine whether the contacts were sufficient in the present facts. In doing so, we consider:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source of and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Id.* at 788. The first three factors are most important. The trial court findings of fact have the force of a jury verdict.

*Tung v. American University of the Caribbean*, 353 N.W.2d 869, 870 (Iowa Ct.App. 1984.).

The trial court in ruling that it lacked personal jurisdiction relied primarily on two cases: *Al-Jon, Inc. v. Garden Street Iron & Metal, Inc.*, 301 N.W.2d 709 (Iowa 1981), and *Rath Packing Co. v. Intercontinental Meat Traders, Inc.*, 181 N.W.2d 184 (Iowa 1970).

■ These cases establish that in analyzing minimum contacts an "active purchaser" is distinguished from a "passive purchaser." *Al-Jon*, 301 N.W.2d at 714. (In this instance, lessee instead of purchaser.) Our focus is not upon the activity of the lessor, but rather upon the activity of the lessee. The trial court found Eagle Valley was not an "active purchaser" and we find this determination was correct.

Eagle Valley was initially contacted in Illinois by a representative of Midwest regarding purchase of a photocopier which Eagle Valley bought. Subsequently, Midwest recommended that Eagle Valley lease a photocopier because their needs had changed. Midwest, not Eagle Valley, contacted Bankers and indicated Eagle Valley was interested in leasing a photocopier.

After the photocopier was delivered, Bankers made its first contact with Eagle Valley and bankers thereafter initiated all contacts between the two corporations that ensued. *Cf. Kagin's Numismatic Auctions, Inc., v. Criswell*, 284 N.W.2d 224 (Iowa 1979). (Florida resident's contacts with Iowa by telephoning into Iowa and shipping goods into Iowa were sufficient to confer personal jurisdiction.) We agree with the trial court in that because Eagle Valley was unaware of the identity of the leasing company, it would have been virtually impossible for Eagle Valley to actively pursue Bankers. Because we find this situation to be within the holdings of *Al-Jon* and *Rath*, we do not find merit in the distinctions Bankers raises as to this point.

■ The trial court went on to find, however, that Eagle Valley's other contacts with Iowa were not enough to satisfy minimum contact requirements. Thus, the issue presented is whether a foreign corporation which has forty members in the forum state from whom it solicits dues and other fees is engaged in continuous and systematic activity to constitute doing business when the cause of action is unrelated to the contacts for purposes of personal jurisdiction. We think such contacts could establish continuous and systematic activity.

This issue was addressed in *Davenport Machinery & Foundry Co. v. Adolph Coors Co.*, 314 N.W.2d 432, 434–35 (Iowa 1982), where the Iowa court, relying on *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, *reh'g denied* 343 U.S. 917, 72 S.Ct. 645, 96 L.Ed. 1332 (1952), found a national beer distributor had systematic and continuous contact with Iowa.

While our case involves a not-for-profit corporation, we find jurisdiction has been asserted over nonresident, not-for-profit corporations in previous authority. *See* 17 *Fletcher Cyclopedia of the Law of Private Corporations,* § 8467 (1977) ("Being organized for the support of charitable, benevolent, educational or religious undertakings it will be deemed to be doing business in the state when it engages therein in the exercise of its corporate functions in some such undertaking. Thus, a foreign fraternal order, incorporated without capital stock and for patriotic, social and benevolent purposes, is doing business in the state, so as to be subject to its regulative statutes, when it forms local organizations in the state, and solicits and secures there new members to whom it furnishes paraphernalia and from whom it collects initiation fees.") *See also State v. Knights of Ku Klux Klan,* 117 Kan. 564, 232 P. 254 (1925); *Knights of Ku Klux Klan v. Commonwealth,* 138 Va. 500, 122 S.E. 122 (1924); *See also People v. Jewish Consumptive Relief Society,* 196 Misc. 579, 92 N.Y.S.2d 157 (1949). (Continuous solicitation of funds punctuated by elaborate fundraising campaigns constituted doing business in forum state by foreign not-for-profit corporation.)

The record indicates Eagle Valley has forty Iowa members and apparently has members nationwide and even in Canada. The document submitted as the Iowa membership list contains Eagle Valley membership numbers 282–322. We do not know, however, how many members Eagle Valley has worldwide. The trial court found that Eagle Valley regularly solicits donations and sends various literature through the mail to such members. While it is unclear whether Eagle Valley has a substantial portion of its members in Iowa, its ongoing solicitations for dues could constitute continuous and systematic activity. *See Davenport Machinery,* 314 N.W.2d at 435. The materials sent into Iowa by Eagle Valley are not wholly unconnected with the cause of action. As in *Davenport Machinery* where the grain dryer parts were connected to Coor's sales in Iowa, use of a photocopier is similarly connected to literature mailed into Iowa. Because the contacts alleged in the petition which were not addressed by the trial court could constitute continuous systematic activity with the forum state, we reverse and remand to determine the extent of Eagle Valley's unrelated contacts with Iowa.

■ As to jurisdiction over Terry Ingram in his personal capacity, Ingram seeks the benefit of the corporate cloak. *See DeCook v. Environmental Security Corp., Inc.,* 258 N.W.2d 721, 727 (Iowa 1977) (Personal jurisdiction over nonresident individual officers of a foreign corporation cannot be predicated merely upon jurisdiction of such corporation.). However, Bankers claims Ingram transgressed that line when he entered into a personal guaranty to pay for any incurred debt and subjected him to personal jurisdiction. We cannot find that the personal guaranty was sufficient to vest Iowa with personal jurisdiction over Terry Ingram. Ingram is not a director of an Iowa corporation, nor did he engage in tortious wrongdoing as did the defendants in *DeCook.* Ingram's personal guaranty contained in the lease agreement was for a corporate purpose, as opposed to a personal purpose, so that his actions receive corporate protection. We are not persuaded that Iowa is an inconvenient forum and express no opinion as to the venue in this action. We affirm the trial court's decision that jurisdiction over Terry Ingram was not warranted.

Therefore, we affirm in part and reverse in part and remand.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.