**Mildred KRAMERSMEIER, DeEtta K. Klatt and Donna Lawrence, on behalf of themselves and all others similarly situated, Appellees,**

v.

**R.G. DICKINSON & CO.; Century Place Partnership, an Iowa Limited Partnership; Darrell E. Berry; Larry D. Sharp; Olson, Poppa, Novak Architects, P.C.; Scott E. Olson; Thomas A. Poppa; James A. Novak; Clarice J. Sharp; Janet M. Berry; Carol M. Olson and Christina Novak, Appellants.**

No. 88–449.

Supreme Court of Iowa.

May 17, 1989.

L.R. Voigts and James C. Wine of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., and Robert L. Cram, Des Moines, for appellant R.G. Dickinson & Co.

Donald F. Neiman and Carol A. Wendl of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellants Century Place Partnership, et al.

Leo E. Fitzgibbons and Ned A. Stockdale of Fitzgibbons Brothers, Estherville, for appellees.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN and SNELL, JJ.

NEUMAN, Justice.

This is an appeal from a district court order certifying a class action. The underlying controversy involves a default in the payment of principal and interest on a $1,375,000 municipal bond issue underwritten by defendant R.G. Dickinson & Co. in connection with the restoration of an historic building owned by defendant Century Place Partnership in Cedar Rapids, Iowa. Plaintiffs Kramersmeier, Klatt and Lawrence purchased $70,000 of the bonds through an R.G. Dickinson broker in Algona. They claim that their loss, and the loss of over 100 other buyers under this bond issue, is attributable to certain material misrepresentations contained in the official statement (prospectus) published in connection with the bond offering. Plaintiffs moved to certify their lawsuit as a class action on the grounds that the size of the proposed class made joinder impossible; that there are questions of law and fact common to the class that will be fairly and adequately protected by these plaintiffs; and that a class action will provide for the fair and efficient adjudication of the controversy.

The certification proposal was resisted by the defendants on three grounds: (1) that the Iowa district court lacks jurisdiction over approximately one-third of the proposed plaintiff class members because they reside outside of Iowa and have insufficient minimum contacts with this state; (2) that Kramersmeier, Klatt and Lawrence are inadequate class representatives because certain affirmative defenses advanced by defendants are peculiar to the claim of these plaintiffs; and (3) that the bond documents at issue contained procedural prerequisites to suit that have not been followed by these plaintiffs.

The district court rejected the defendants' contentions, specifically finding that plaintiffs had satisfied Iowa Rule of Civil Procedure 42.1[1], that a class action would permit a fair and efficient adjudication of the controversy, and that the plaintiffs would fairly and adequately protect the interests of the class. It is from this order that defendants have appealed. We affirm.

I. Trial courts are vested with broad discretion in the certification of class action lawsuits. *Vignaroli v. Blue Cross*, 360 N.W.2d 741, 743–44 (Iowa 1985). Thus our scope of review on appeal is limited to a determination of whether that discretion has been abused. *Id.* at 743. Reversal is not warranted unless the record demonstrates that the district court's decision was based on grounds that are clearly untenable or unreasonable. *Martin v. Amana Refrigeration, Inc.*, 435 N.W.2d 364, 367 (Iowa 1989).

■ II. As its first and primary ground for reversal, R.G. Dickinson asserts that the court erred as a matter of law in concluding that the Iowa district court has jurisdiction over the thirty-four nonresident plaintiff class members who purchased the Century Place bonds. The contention brings into sharp focus the meaning of our multi-state jurisdiction rule:

A court of this state may exercise jurisdiction over any person who is a member of the class *suing* or being sued if:

(1) a basis for jurisdiction exists or would exist in a suit *against* the person under the law of this state....

Iowa R.Civ.P. 42.6(a)(1) (emphasis added). R.G. Dickinson argues that the plain language of the rule permits Iowa to extend its jurisdiction to a nonresident plaintiff only if that same plaintiff would be subject to suit in Iowa as a defendant. The clear implication of the argument is that a class action plaintiff, like the customary defendant, must have " 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and sub-

---

1. Iowa Rule of Civil Procedure 42.1 reads, in pertinent part:

One or more members of a class may sue ... on behalf of all in a class action if:

(1) The class is so numerous or so constituted that joinder of all members, whether or not otherwise required or permitted, is impracticable; and

(2) There is a question of law or fact common to the class.

stantial justice.'" *Smalley v. Dewberry,* 379 N.W.2d 922, 924 (Iowa 1986) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)).

The plaintiffs counter that courts in class action suits need only afford minimal due process requirements to assume jurisdiction over nonresident plaintiffs because "[t]he burdens placed by a State upon an absent class-action plaintiff are not of the same order or magnitude as those it places upon an absent defendant." *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 808, 105 S.Ct. 2965, 2972, 86 L.Ed.2d 628, 639 (1985).

In *Phillips,* the plaintiffs were acting on behalf of 30,000 gas lease royalty owners residing in each of the fifty states and some foreign countries who were suing for the recovery of delayed royalty payments. They sought class certification of the action in Kansas, even though less than one percent of the leases involved were on Kansas land. Given the marked dissimilarity in the relative risks and responsibilities faced by class action plaintiffs by comparison with class action defendants, the Court rejected the oil company's "minimum contacts" jurisdictional challenge and held that due process requires only that class action plaintiffs be given notice, an opportunity to be heard, and an opportunity to be excluded from the litigation by the execution of an "opt out" form, procedural safeguards satisfied by the pertinent Kansas class action statute. *Id.* at 811–12, 105 S.Ct. at 2974–75, 86 L.Ed.2d at 642–43.

In its opinion, the Supreme Court catalogued the substantial burdens faced by absent class action defendants: the full power of the forum state marshalled to render judgment *against* the absent defendant; the expense of traveling to and hiring counsel in the forum state to avoid a default judgment; participation in often costly and extended discovery to successfully defeat the suit; and the potential liability for damages, court costs and, perhaps attorney fees in the event of loss. *Id.* at 808, 105 S.Ct. at 2972, 86 L.Ed.2d at 639. By contrast, the Court noted, class action

plaintiffs are "not haled anywhere to defend themselves upon pain of a default judgment," need not fend for themselves, and may in fact do nothing but "sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for ... [their] protection." *Id.* at 809, 810, 105 S.Ct. at 2973–74, 86 L.Ed.2d at 640–41.

Despite the logical appeal of the Supreme Court's analysis, we are prevented from applying it in the case before us. The Kansas statute interpreted by the Court in *Phillips* contains no multistate jurisdictional provision comparable to that found in our rule 42.6(a)(1). *See* Kan.Stat.Ann. § 60–223 et seq. (1983). Instead, Iowa has adopted the more narrow jurisdictional language of the Uniform Class Action Act, generally viewed by commentators as exceeding the necessary constitutional limits of due process by imposing a "minimum contacts" standard even in the case of class action plaintiffs. Note, *The Iowa Uniform Class Actions Rule: Intended Effects and Probable Results,* 66 Iowa L.Rev. 1241, 1264 (1981); *see also* Comment, *State Court Jurisdiction Over Multistate Plaintiff Class Actions: Minimum Contacts and Miner v. Gillette,* 69 Iowa L.Rev. 795, 801–10 (1984) (suggesting inapplicability of minimum contacts test to nonresident plaintiffs in the context of state that had not adopted Uniform Act). In other words, rule 42.6 plainly places a nonresident plaintiff in the jurisdictional shoes of a nonresident defendant.

We are thus constrained by the language of rule 42.6 from applying the *Phillips Petroleum* analysis adopted by the trial court. Nevertheless, we are convinced that the flaw in the court's reasoning is not fatal to its jurisdictional ruling. *See Kelly v. Iowa Valley Mut. Ins. Ass'n,* 332 N.W. 2d 330, 333 (Iowa 1983) (supreme court will uphold trial court ruling if supportable on any proper basis). Even applying the more stringent "minimum contacts" test, we think the nonresident plaintiffs meet that jurisdictional standard here.

The five criteria by which we judge the sufficiency of minimum contacts are well

known: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience of the parties. *Smalley*, 379 N.W. 2d at 924; *Al–Jon, Inc. v. Garden St. Iron & Metal, Inc.*, 301 N.W.2d 709, 711 (Iowa 1981); *Bankers Leasing Co. v. Eagle Valley Environmentalists, Inc.*, 387 N.W.2d 380, 382 (Iowa App.1986). The first three factors are most important. *Bankers*, 387 N.W.2d at 382.

The record before us reveals that although the quantity of contacts between the nonresident bond purchasers and the Iowa defendants is fairly low (one or more purchases per bondholder), the quality and nature of those contacts are high, as is the source and connection of those contacts with the state of Iowa. The bond offering itself involved sales contracts negotiated by Iowa residents (R.G. Dickinson agents) in increments of $5000 with periodic installments of principal and interest payable, from funds generated in Iowa, over the term of the bonds. *Compare Bankers*, 387 N.W.2d at 383 (ongoing solicitation of dues from Iowa residents could constitute "systematic and continuous" activity establishing minimum contacts) *with Smalley*, 379 N.W.2d at 925 (no minimum contacts where dealer sold single auto part to Iowan in Tennessee).

More importantly, the suit alleges that resident as well as nonresident plaintiffs relied to their detriment upon a prospectus prepared by an Iowa underwriter and an Iowa limited partnership for the sole purpose of selling bonds to develop Iowa real estate for the benefit of an Iowa city. By availing themselves of the tax-free benefits of this long-term financial investment in an Iowa municipality, we think these nonresidents could reasonably contemplate the invocation of Iowa law to protect their interests. In sum, we find the connection between these nonresident plaintiffs and the State of Iowa of such consequence that Iowa's assertion of jurisdiction meets the requirements of fair play and substantial justice underlying the "minimum contacts"

standard of *International Shoe*. We thus affirm the trial court's ruling on this issue.

III. Next, R.G. Dickinson asserts that the trial court abused its discretion by certifying a class whose representative plaintiffs cannot "fairly and adequately ... protect the interests of the class" as required by Iowa Rule of Civil Procedure 42.2. Specifically, the defendant claims that neither Mildred Kramersmeier nor her daughters DeEtta Klatt and Donna Lawrence can establish a crucial element of their case—reliance on the alleged misrepresentations in the prospectus. Such a failure, defendant contends, defeats two important class action criteria: adequate representation and commonality.

Plaintiffs' response to this argument is twofold: first, that forecasting the likelihood of plaintiffs' success on the merits is not the proper inquiry at the certification stage of the proceeding; and second, that the defendant has mischaracterized the nature of plaintiffs' claim thereby misstating the requisite standard for recovery.

The validity of plaintiffs' first contention cannot be seriously disputed. *See Vignaroli*, 360 N.W.2d at 745 ("certification of a class action ... does not depend on a determination of whether the plaintiffs will ultimately prevail on the merits but whether or not the requirements of the rule governing class action are met"). Nevertheless, a preliminary inquiry into the legal and factual sufficiency of the plaintiffs' claim is appropriate inasmuch as they seek to represent the interests of the entire class.

One of the many criteria to be considered on the certification issue is "whether common questions of law or fact predominate over any questions affecting only individual members." Iowa R.Civ.P. 42.-3(a)(5). Where, as here, the record suggests a defense peculiar to the representative plaintiffs, the court must concern itself with whether such a defense is likely to cause the plaintiffs' representation of the remainder of the class to suffer. *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 335 (N.D.Ill.1982). We thus turn to the record made before the district court.

Plaintiffs' petition alleges that the prospectus used in the sale of the bond issue contained material misrepresentations concerning the ability of the guarantors (all individually-named defendants) to fulfill their written promise to "personally and unconditionally guarantee ... the full and prompt payment" of principal and interest due on the bonds, backed up by the claim that their "combined aggregate net worth ... is not less than $2,000,000." Plaintiffs claim that financial statements available to R.G. Dickinson at the time this prospectus was issued show that a high concentration of the guarantor's assets consisted of fractional shares in real estate developments and closely held corporations, thus evidencing a lack of liquidity materially inconsistent with an ability to make good on the "prompt payment" language of the guaranty. Failure to disclose this material fact, plaintiffs assert, constituted negligence and breach of warranty, as well as a prohibited fraudulent practice under section 502.401 of the Iowa Uniform Securities Act.[2]

The facts gathered during discovery revealed that Mildred Kramersmeier, accompanied by her attorney, went to the office of an R.G. Dickinson broker, Bill Farnham, for the purpose of seeking information about tax-free investment opportunities. Mr. Farnham recommended she consider the Century Place municipal bonds. In deposition testimony, Farnham explained that he used the Official Statement, or prospectus, to describe the bonds to Mrs. Kramersmeier. He acknowledged that he "walked her through" the document page by page to highlight what he perceived to be the advantages of this particular municipal bond issue, including the first mortgage on the building, the debt service reserve fund, and the guaranty. We quote here from Farnham's deposition:

"I pointed out that there was a guarantee by the individuals involved in the project for payments—prompt payment of the principal and the interest. And I pointed out that they had a net worth of $2,000,000."

The attorney who accompanied Mrs. Kramersmeier to the broker's office testified that Farnham underlined salient points in the prospectus, including those pertaining to the guaranty, and gave Mrs. Kramersmeier a copy at the close of the sales presentation. Thereafter, Mrs. Kramersmeier purchased $70,000 of the bonds, asking that they be issued in joint tenancy with her two daughters in amounts of $35,000 each.

In her own deposition testimony, Mrs. Kramersmeier denied having read the prospectus herself or relying on its specific provisions except to the extent that the security appeared to the broker to be a "good buy." Farnham acknowledged that his sole source of information concerning the bond offering was the prospectus.

Given this record, R.G. Dickinson contends that the plaintiffs cannot prevail on their securities fraud claim. Relying on securities fraud cases interpreting federal rule 10b–5, the federal counterpart to Iowa Code section 502.401, defendant asserts that proof of reliance on the written prospectus is crucial to a claim of material misrepresentation and that Mrs. Kramersmeier's admitted disregard for the document negates any factual dispute on that issue, to her detriment and that of the proposed class members. Like the district court, however, we are not convinced that either the authority relied upon by the defendant, or the inferences to be drawn from the factual record, support the defendant's contention.

Defendant relies principally on *Vervaecke v. Chiles, Heider & Co.*, 578 F.2d

2. Section 502.401 states:

It is unlawful for any person, in connection with the offer to sell, offer to purchase, sale or purchase of any security in this state, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

713 (8th Cir.1978). Not unlike the case before us, *Vervaecke* involved municipal bond purchasers who sued a broker, and others, for allegedly material misrepresentations and "omissions in the nature of misrepresentations" in two offering statements accompanying their respective bond offerings. *Id.* at 717. Although the precise nature of the claimed deceit is unclear from the opinion, the court determined that the case, as pled, gave rise primarily to a claim of misrepresentation within the four corners of the document, rather than a claim of omission. *Id.* at 717–18. Accordingly, the court held that reliance could not be presumed, in contrast to a case of "pure" nondisclosure where a more relaxed standard of proof is applied in recognition of the inherent difficulty attending proof of reliance on the negative. *Id.* Because Vervaecke admitted never having seen or read the offering statement prior to his purchase, the court found the record insufficient to raise a genuine factual dispute with regard to Vervaecke's reliance on the misleading bond documents and sustained the trial court's summary judgment for defendants. *Id.* at 719.

Unlike *Vervaecke*, the case before us is somewhat of a hybrid. Although Mrs. Kramersmeier states she neither read the prospectus nor knew of the guaranty prior to her purchase of the stock, R.G. Dickinson's own broker admitted reading significant portions of the document to her, emphasizing the value of the guaranty. Moreover, it is clear that Mrs. Kramersmeier did rely on the broker's oral statements and that he relied solely on the prospectus for his information. Thus the petition alleges both misrepresentation and omission of material facts and may be read to embrace defendants' oral as well as written representations.

Under these circumstances, a reversal of the trial court's certification order for failure of proof of reliance would be tantamount to requiring proof of plaintiffs' ability to "win on the merits," a showing clearly not contemplated by rule 42 or prior decisions of this court. Moreover, we are convinced that there is ample support in the record for the district court's conclu-

sion that these plaintiffs share with other members of the class common questions of law and fact concerning what R.G. Dickinson, as underwriter, knew or should have known concerning the validity of the guaranty and whether the prospectus, as the common source of those questions, misled the plaintiffs and other bond purchasers in alleged violation of statutory and common law. No abuse of the trial court's broad discretion in the designation of the class representatives has been shown.

IV. Finally, defendants Century Place Partnership and the individually named defendants who are its limited partners urge us to reverse the class certification on the ground that the bond documents themselves preclude the commencement of such an action. Specifically, these defendants point to language in the bond and accompanying trust indenture that purports to limit the right of bondholders "to take any action with respect to any event of default" except upon the refusal of the trustee to so act after having been requested to do so by holders of twenty-five percent of the outstanding bonds. No such request has been made here. The trustee has, in fact, commenced foreclosure proceedings as well as an action to recover under the guaranty. In view of this pending litigation, these defendants claim that the district court's class certification does not comport with the "fair and efficient adjudication of the controversy" requirement of rule 42.2(b).

It is the general rule that restrictions against suit on a bond and indenture of trust may prevent a bondholder's suit *on the bond,* except through the trustee. *McPherson v. Commercial Bldg. & Sec. Co.,* 206 Iowa 562, 565, 218 N.W. 306, 307 (1928). Other ancillary actions arising from the purchase, sale or retention of the bonds, however, may be maintained by the bondholders despite a nonsuit provision in the bond. *National City Bank v. Coopers & Lybrand,* 409 N.W.2d 862, 867–68 (Minn. App.1987); *cf. Gould v. J. Henry Schroder Bank & Trust Co.,* 78 A.D.2d 870, 870–71, 433 N.Y.S.2d 32, 34 (1980). Consistent with this latter rule, Iowa Code section 502.506 appears to void nonsuit pro-

visions which relate to limitations on recovery for securities law violations.

As for defendants' assertion that it is neither efficient nor fair to subject these defendants to one lawsuit on the bond and another for claimed securities violations, we note that reversal of the class action certification order could result in the commencement of 111 separate suits against these defendants. Given that alternative, the district court's ruling seems to us clearly within the bounds of its discretion.

AFFIRMED.